KING, HOLMES, PATERNO & SORIANO, LLP
HOWARD E. KING, ESQ., STATE BAR NO. 77012
STEPHEN D. ROTHSCHILD, ESQ., STATE BAR NO. 132514
SROTHSCHILD@KHPSLAW.COM
1900 AVENUE OF THE STARS, TWENTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90067-4506
TELEPHONE:   (310) 282-8989
FACSIMILE:    (310) 282-8903

Attorneys for Plaintiff Jeffrey Scott

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| JEFFREY SCOTT, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>THE WALT DISNEY COMPANY, a Delaware corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | CASE NO.<br><br>Complaint for<br><br>1) Copyright Infringement<br>2) Breach of Contract<br>3) Idea Misappropriation<br>4) Fraud<br><br>REQUEST FOR JURY TRIAL |

Plaintiff Jeffrey Scott ("Scott") hereby alleges as follows:

1. This case is to remedy defendant The Walt Disney Company's ("Disney") unapologetic misappropriation of a veteran television writer's award-winning contributions to one of its most treasured animated properties, the *Muppet Babies* television show, and of valuable new ideas he submitted for Disney's *Muppet Babies* reboot, which first aired in March 2018.

2. Scott is among animation's most acclaimed screenwriters, with decades of experience developing, writing and story-editing children's shows, primarily for network TV, including not only *Muppet Babies*, but also *Super Friends, Spider-Man*, *Teenage Mutant Ninja Turtles*, *Pac Man*, *Hulk Hogan's Rock 'n' Wrestling, Sonic the Hedgehog*, *Zorro*, *James Bond Jr.*, *Dragon Tales*, and many others.  He

also is the author of a widely respected text on animation screenwriting, among other accomplishments.

3. Scott created the original *Muppet Babies* production bible, which he owns and in which he has a registered copyright, in the early 1980s. The production bible created and defined the foundational elements of the show. In exchange for the bible, Marvel Productions, Ltd., from which Disney acquired the *Muppet Babies* property, promised Scott the right to write all episodes of the show and a royalty for each episode produced, whether or not he wrote it, and to afford him a "Developed for Television By" credit on each episode produced.

4. Disney has now saturated the reboot with the elements Scott created or co-created without giving Scott any credit or compensation for its wholesale use of his work.

5. After the bible, Scott wrote the scripts for all but four of the episodes produced during the first three years of *Muppet Babies*' original run, for which he received three Emmy awards and a Humanitas Prize. When Scott left the Series in 1986 to pursue other opportunities, Jim Henson wrote to him, "Thank you for all you've done for MUPPET BABIES. I think it's a terrific series – because of you."

6. Scott never conveyed ownership of the bible (or his scripts) to Marvel Productions Ltd. ("Marvel"), which produced the original series, or to Disney after it acquired Marvel.

7. In making the reboot, Disney not only misappropriated Scott's bible and scripts, it also misappropriated ideas that Scott presented to it for the reboot. In 2014, Scott suggested to Disney that it produce new episodes of the *Muppet Babies* —something which Disney either was not then considering, or, if it was, Disney executives did not disclose to Scott.

8. In 2015, Disney began the early stages of developing the new *Muppet Babies* show. In early 2016, Disney executives met with Scott at their request, and he presented detailed ideas for the show's updated structure, look and characters,

and for new episodes, with the understanding on both sides that, if Disney used Scott's ideas and produced new episodes, it would pay for Scott's ideas and honor the commitments that Disney's predecessor, Marvel, and Jim Henson, made to him. A Disney executive then emailed Scott asking him to send Disney his ideas in writing, which Scott did.

9. Disney never compensated Scott for the ideas he presented in 2016 and never gave him an opportunity to work on the *Muppet Babies* reboot.

10. Disney has released two seasons of new *Muppet Babies* episodes, for a total of 41 episodes, and is releasing a third season this year. The new episodes incorporate the elements in Scott's bible and the concepts he presented in 2016, and plagiarize dialogue, plot points, images and many other elements from Scott's original scripts. Yet, Disney continues to refuse to acknowledge Scott's essential, protected contributions and to pay for them.

## THE PARTIES

11. Scott is and at all times material herein has been an individual residing in the County of Los Angeles, California.

12. Disney is and at all times material herein has been a corporation organized and existing under the laws of the State of Delaware with its principal place of business in the County of Los Angeles, California.

13. Scott does not know the true names and capacities, whether individual, corporate, associate, or otherwise, of the defendants named herein as DOES 1 through 10, inclusive. Scott sues them by use of fictitious names. Scott is informed and believes that Doe defendants 1 through 10 are affiliated in some manner with Disney and have direct, contributory, or vicarious responsibility for the wrongful acts alleged herein. Scott will amend this complaint appropriately once the true names and capacities of Doe defendants 1 through 10 are learned. As used below, the term "Disney" shall collectively refer to the named defendant Disney together with the defendants identified as DOES 1 through 10.

King, Holmes, Paterno & Soriano, LLP

5395.060/1612531.2

3

14.     On information and belief, at all times herein mentioned, each of the defendants was the agent of each of the remaining defendants, and in doing the things alleged herein, was acting within the scope of such agency.  On information and belief, the conduct of each of the defendants as alleged herein was ratified by each of the other defendants, and the benefits thereof were accepted by each of the other defendants.

## JURISDICTION AND VENUE

15.     This action arises under the United States Copyright Act of 1976.  The complaint states a claim for infringement of a federally registered copyright under the Copyright Act (17 U.S.C. §§ 106 and 501).

16.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338.  This Court has pendent and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1338(b) and 1367(a).

17.     This Court has personal jurisdiction over Disney because Disney's principal place of business is in California and in this district, and because Disney committed one or more of the infringing acts complained of herein in California and in this district.

18.     Venue in this Court is proper at least under the provisions of 28 U.S.C. § 1391.

## FACTS

19.     In or about October 1983 Marvel obtained Scott's services to create a series production bible and write scripts for a new Muppet-based television show, depicting the Muppet characters as youngsters.  Although Marvel proposed draft written agreements, Scott never accepted them and they were never fully executed, and Scott was not an employee of Marvel or of the Jim Henson Company, which co-produced the show.  Pursuant to the parties' agreement, which was partially oral and partially reflected in portions of the unsigned agreements, Marvel initially paid Scott $12,000 per script he wrote, which increased to $13,500 per script in 1986, and gave

him the right to write the script of each new episode produced, and agreed to pay him a $3,500 royalty for each new episode produced, in perpetuity. Marvel also agreed to give Scott a "Developed for Television by" credit on each episode. Marvel kept those promises; Disney has not.

20. Scott created and wrote the *Muppet Babies* production bible and wrote all but four of the episodes (which he agreed to allow others to write) produced during the show's first three seasons, and then chose to pursue other opportunities. Marvel continued to pay Scott his $3,500 per show royalty for the duration of the show's first run.

21. Scott is the registered owner of the copyright in the *Muppet Babies* production bible. *The Muppet Babies* Production Bible created the show's nursery setting, the child versions of the characters, the mix of entertainment and education, and the blueprint for its stories. Scott created, developed and refined character traits, running gags associated with each character, and the characters' relationships with each other. Scott also developed an entirely new character, Nanny, creating personality and other attributes, including her distinctive colored socks, which were and remain integral to the series. Scott's bible defined the nursery environment in which each episode takes place; and created show structures incorporating fantasies and adventures that spring from the characters' imaginations and start in the nursery, often taking them to new environments in their imaginations; the use of live action footage and photographs; how the show uses music; and many other elements. A copy of the bible is attached hereto as Exhibit 1 and incorporated herein by reference. A copy of Scott's copyright registration of the bible, Registration No. TXu 2-163-328, is attached hereto as Exhibit 2 and incorporated herein by reference.

22. In November 2014, Scott proposed to Lisa Henson, the president of the Jim Henson Company, that Disney produce new *Muppet Babies* shows, and asked her who at Disney to talk to about his idea.

23. Ms. Henson put Scott in contact with Debbie McClellan ("McClellan"), a then vice-president at Disney's The Muppets Studio. McClellan told Scott that Disney was planning other Muppets projects and to re-release the *Muppet Babies* series, and expressed interest in producing new episodes of *Muppet Babies*.

24. In early 2016, Scott met with Disney executives Joe D'Ambrosia ("D'Ambrosia") and Alyssa Cooper Sapire ("Sapire"), and gave them his ideas for a *Muppet Babies* reboot. In addition to written ideas that Scott had already provided to them at their request, the Disney executives asked Scott to send them some of his *Muppet Babies* scripts, which he did. Scott's ideas, which he also gave to Disney in a "pitch" document he sent on March 4, 2016, a true and correct copy of which is attached hereto as Exhibit 3 and incorporated herein by reference, and which Disney used in the new episodes, included making the nursery a big warm room in a charming old house, furnished with art supplies, books, a table, a play area, and other things; adding an outdoor play area with play equipment and other elements; making the nanny character younger; structuring episodes around the Muppet Babies encountering problems in the real world and using their imaginations to explore, amplify, and resolve them; and others. At the early 2016 meeting, Scott also suggested having the Nanny character's socks change in different episodes. Disney used that idea too.

25. Scott discovered that Disney had interpolated most of the elements of his bible, and the ideas he presented to the Disney executives in 2016, when he saw episodes of the *Muppet Babies* reboot, which first aired on or about March 23, 2018. Thereafter, as new episodes aired, he discovered that Disney had interpolated even more elements of his bible, and elements of the scripts that he wrote, in new episodes, without any compensation or credit to him. On January 31, 2020, the parties entered into a tolling agreement tolling all statutes of limitations applicable to Scott's claims herein. The tolling agreement terminated on September 4, 2020.

26. Disney continues to interpolate Scott's bible, elements of the episodes

he wrote, and the ideas he submitted in 2016 in new episodes of *Muppet Babies*, and continues to fail and refuse to compensate him and to accord him the "Developed for Television by" credit that Marvel promised him.

## FIRST CLAIM FOR RELIEF

(For Copyright Infringement)

27. Scott incorporates the foregoing paragraphs by reference, as though fully set forth.

28. 17 U.S.C. § 501 prohibits, *inter alia*, anyone from copying original expression from a copyrighted work without the owner's permission.

29. Scott is the sole owner of the copyright in the bible that is fixed in a tangible medium of expression.

30. From and after March 23, 2018, and continuing to the present, Disney has infringed Scott's exclusive rights under the Copyright Act, 17 U.S.C. §§ 106 and 501, by interpolating the bible into the *Muppet Babies* reboot and producing, reproducing, distributing, and publicly displaying the reboot, without Scott's authorization or consent.

31. On information and belief, Disney's infringement has been undertaken knowingly and with intent to financially gain from Scott's copyrighted work, or Disney acted with reckless disregard for, or willful blindness to, Scott's rights.

32. Disney's conduct has damaged and will continue to damage Scott. Scott's damages include, but are not limited to, the loss of the value of the bible's use in the reboot, Disney's profits from its unauthorized use of the bible, and the value of Disney's failure and refusal to accord Scott credit for its use of his original work.

33. As a result of its conduct as alleged above, Disney has been unjustly enriched and has wrongfully profited.

34. Scott is entitled to actual damages and any profits of Disney that are attributable to the infringement and not taken into account in computing actual

damages, in an amount to be proved at trial and all other relief allowed under the Copyright Act, all in an amount to be proved at trial herein.

## SECOND CLAIM FOR RELIEF

(For Breach of Contract)

35. Scott incorporates the foregoing paragraphs by reference, as though fully set forth.

36. In or about Fall 1983, Scott and Marvel, Disney's predecessor-in-interest, entered into an agreement, partly oral and partly in writing, whereby Scott agreed to write scripts for the *Muppet Babies* television show, in exchange for which Marvel agreed (1) to pay Scott $12,000 per script, (2) to pay Scott a royalty of $3,500 for every *Muppet Babies* episode produced, (3) to afford Scott a "Developed for Television Credit" on each episode, and (4) that Scott had the right to write every *Muppet Babies* script produced thereafter (the "Agreement").

37. In or about 1986, the parties agreed to increase Scott's per script fee to $13,500.

38. Scott has performed all of his obligations under the Agreement except those that Marvel and Disney waived or made it impossible to perform.

39. Disney has breached the agreement by (1) failing and refusing to pay Scott the $3,500 royalty due him for every episode of *Muppet Babies* produced for the reboot, and (2) failing and refusing to offer Scott the opportunity to write the scripts for the *Muppet Babies* reboot, (3) failing to pay Scott his $13,500 fee for those episodes, and (4) failing to give Scott his "Developed for Television by" credit.

40. As a direct and proximate result of Disney's breaches of the Agreement, Scott has been damaged in the amount of $17,000 per episode of the reboot produced. Scott is informed and believes that Disney has produced and released more than 41 episodes to date, and continues to produce additional episodes without according Scott the opportunity to write them or paying the royalties to

which he is entitled under the Agreement, and without according Scott the Developed for Television credit to which he is entitled, so that Scott's damages to date exceed $697,000, plus interest at the legal rate, for shows produced to date, additional damages to be proved at trial, plus interest, for shows produced between the filing of this complaint and trial, and additional damages to be proved at trial, plus interest, for the loss of the "Developed for Television by" credit to which Scott is entitled.

## THIRD CLAIM FOR RELIEF

(Breach of Implied Contract)

41. Scott incorporates by reference the foregoing paragraphs as though fully set forth.

42. When Scott submitted his ideas for a *Muppet Babies* reboot to Disney in 2016, he and Disney entered into an implied in fact contract whereby Disney agreed to pay Scott for the appropriation and use of his ideas.

43. Scott submitted his ideas to Disney at Disney's request.

44. Scott received representations and warranties, implied and express, that Disney would not exploit his ideas without compensating him for them, including monetary compensation and a screen credit reflecting his contributions to the *Muppet Babies* reboot.

45. Scott has performed all of his obligations under the Agreement except those that Disney waived or made it impossible to perform.

46. Disney breached its obligations to Scott under the implied agreement by interpolating his ideas into the reboot without compensating him or giving him a screen credit.

47. As a proximate result of Disney's breach of its implied in fact contract to compensate and credit Scott, Scott has been damaged in an amount according to proof at time of trial, plus interest at the legal rate.

/ / /

## FOURTH CLAIM FOR RELIEF

### (For Fraud)

48. Scott incorporates by reference the foregoing paragraphs as though fully set forth.

49. Scott is informed and believes that, when Disney executives D'Ambrosia and Sapire solicited Scott's ideas for a *Muppet Babies* reboot, they and their superiors at Disney knew, and concealed from Scott, that Disney had assembled or was assembling a production team for the reboot, and that they and their superiors had no intention of offering Scott an opportunity to work on the reboot or to pay him for his ideas, which they intended to use without complying with their obligations under the parties' implied agreement.

50. Scott, when the Disney executives falsely represented that it would pay and credit him for his ideas for the reboot and consider offering him an opportunity to work on the reboot in good faith, was ignorant of the falsity of Disney's misrepresentations and believed them to be true. In reliance on the misrepresentations, plaintiff was induced to and did provide his ideas for the reboot to Disney.

51. The aforementioned conduct of Disney constituted intentional misrepresentations, deceits, and concealments of material fact known to Disney with the intention on Disney's part to thereby deprive Scott of property or legal rights or otherwise to cause injury, and was despicable conduct that subjected Scott to cruel and unjust hardship in conscious disregard of Scott's rights, so as to justify an award of exemplary and punitive damages.

WHEREFORE, plaintiff prays for judgment, as follows:

1. For damages according to proof, plus interest at the legal rate;

2. For an accounting of Disney's revenues and profits from the *Muppet Babies* reboot;

3. For an order that Disney accord Scott an "Developed for Television by"

credit on each episode of the *Muppet Babies* reboot;

    4.    For punitive damages;

    5.    For Scott's costs incurred herein; and

    6.    For such other and further relief as the Court deems just and equitable.

DATED: October 22, 2020    KING, HOLMES, PATERNO & SORIANO, LLP

By:   */s/ Stephen D. Rothschild*
      HOWARD E. KING
      STEPHEN D. ROTHSCHILD
Attorneys for Plaintiff Jeffrey Scott

## REQUEST FOR JURY TRIAL

Plaintiff respectfully requests a trial by jury for the claims asserted herein.

DATED: October 22, 2020    KING, HOLMES, PATERNO & SORIANO, LLP

By:   */s/ Stephen D. Rothschild*
      HOWARD E. KING
      STEPHEN D. ROTHSCHILD
Attorneys for Plaintiff Jeffrey Scott