JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No.: | 2:20-cv-09709-SB-SK | Date: | 3/30/2021 |
|---|---|---|---|

Title: *Jeffrey Scott v. The Walt Disney Company et al*

Present: The Honorable  STANLEY BLUMENFELD, JR., U.S. District Judge

| Victor Cruz | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Appearing | None Appearing |

**Proceedings:** **ORDER GRANTING MOTION TO DISMISS (DKT. NO. 17)**

Before the Court is Defendant The Walt Disney Company's motion to dismiss. Dkt. No. 17 (MTD); *see* Dkt. Nos. 22 (Opp.), 24 (Reply).

I. **BACKGROUND**

According to the complaint, Plaintiff is a veteran screenwriter "with decades of experience developing, writing and story-editing children's shows, primarily for network TV." Dkt. No. 1 (Compl.) ¶ 2. In 1983, Marvel Productions Ltd. obtained Plaintiff's services "to create a series production bible and write scripts for a new Muppet-based television show," *Muppet Babies*, which "depict[ed] the Muppet characters as youngsters." *Id.* ¶ 19. The so-called "production bible" was allegedly the "blueprint" for the show: developing character traits, character relationships, the setting, the general plot and structure of each episode, and other aspects of the show. *Id.* ¶ 21; *see* Dkt. No. 1-1 (copy of 1984 *Muppet Babies* "Production Bible"). According to Plaintiff, in exchange for the production bible, Marvel promised

Plaintiff the right to write each episode of the show, a royalty for each episode, and a "Developed for Television By" credit on each episode. *Id.* ¶ 3. Plaintiff allegedly wrote all but four episodes produced during the show's first three years, before leaving to pursue other opportunities. *Id.* ¶ 5.

In 2003, Plaintiff filed for Chapter 7 bankruptcy. Dkt. 18-1. And sometime after the original *Muppet Babies* show ended, Defendant acquired Marvel and the Muppets properties. Compl. ¶¶ 3, 6.

In 2015, Defendant allegedly began developing a new *Muppet Babies* show. *Id.* ¶ 8. In early 2016, executives of Defendant met with Plaintiff "at their request" and Plaintiff "presented detailed ideas for the show's updated structure, look and characters, and for new episodes." *Id.* Plaintiff alleges that both sides understood that if Defendant used Plaintiff's ideas and produced new episodes, Defendant would honor the arrangement Plaintiff had with Marvel during the original show's production. *Id.* Defendant, however, has released two seasons of new *Muppet Babies* episodes but has never compensated Plaintiff for his ideas or given him an opportunity to work on the reboot. *Id.* ¶¶ 9-10.

Defendant registered a copyright in the original show's production bible in 2019. Dkt. No. 1-2. In October 2020, Plaintiff sued Defendant in this Court for copyright infringement, breach of contract, implied breach of contract and fraud. Compl. ¶¶ 27-51. The thrust of the infringement claim is that the *Muppet Babies* reboot infringes on the protectable elements of the production bible. *Id.* ¶¶ 27-34. Defendant now moves to dismiss under Federal Rule 12(b)(1) and 12(b)(6). Dkt. No. 17.

## II.     LEGAL STANDARD

Defendant's motion to dismiss is brought under both Rule 12(b)(1) and Rule 12(b)(6). *See* MTD 7-25.

A motion to dismiss filed pursuant to Rule 12(b)(1) is a challenge to the Court's subject matter jurisdiction. The challenge may be either facial (where the jurisdictional defects are plain on the face of the pleading) or factual (where the jurisdictional defects are apparent from evidence extrinsic to the complaint). *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). The plaintiff has

the burden to establish that subject matter jurisdiction is proper. *Ass'n of Am. Med. Colls. v. United States*, 217 F.3d 770, 778-79 (9th Cir. 2000).

A motion to dismiss under Rule 12(b)(6), on the other hand, challenges the sufficiency of the pleadings and asserts that a complaint does not plead a claim upon which relief can be granted. To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotations omitted). The Court may consider "only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (citation omitted).

It is unclear whether Defendant's standing arguments may be considered under Rule 12(b)(1). MTD 7-8. Defendant cites two cases in which the Ninth Circuit affirmed 12(b)(1) dismissals of copyright claims for lack of standing. MTD 9 (citing *Righthaven LLC v. Hoehn*, 716 F.3d 1166, 1170 (9th Cir. 2013) and *Warren v. Fox Fam. Worldwide, Inc.*, 328 F.3d 1136, 1140-41 (9th Cir. 2003)). But more recently, the Ninth Circuit has instructed that a motion asserting that a plaintiff "lack[s] standing under the Copyright Act to bring an infringement suit" should be "brought under Rule 12(b)(6) for failure to state a claim rather than under Rule 12(b)(1) for lack of jurisdiction, for the issue is statutory rather than Article III standing." *Minden Pictures, Inc. v. John Wiley & Sons, Inc.*, 795 F.3d 997, 1001 (9th Cir. 2015); *see Wongab Corp. v. Saks Inc.*, No. CV-18-10750 RSWL-JC, 2019 WL 8226079, at *2 (C.D. Cal. Dec. 13, 2019) (argument that plaintiff "lacked standing" to bring "copyright infringement claim" "should have been brought under Rule 12(b)(6) for failure to state a claim, rather than Rule 12(b)(1) for lack of subject matter jurisdiction").[1]

If Rule 12(b)(6) is the required vehicle, the Court may not be able to resolve Defendant's first standing argument—that Plaintiff lacks standing to pursue a copyright claim based on a work made for hire or an unauthorized derivative work—at this stage. Defendant's argument relies largely on a document outside of the pleadings, a production agreement between Henson Associates and Marvel, which "placed conditions on HA's licensing of Muppet Babies intellectual

---

[1] At the hearing, defense counsel suggested that Defendant was advancing an Article III standing argument. But the parties did not squarely address the nature of the argument and its proper characterization in the briefing.

property for purposes of developing the cartoon show." MTD 3, 8-11. Defendant claims "this document is . . . properly considered on a Rule 12(b)(1) motion." MTD 3. But the introduction of extrinsic evidence is typically not permitted in the context of a Rule 12(b)(6) motion. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) ("As a general rule, 'a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion.'").

The Court, however, need not decide this procedural issue because Defendant's second standing argument—that Plaintiff's copyright claim should be dismissed because it is based on a copyright not disclosed in Plaintiff's 2004 bankruptcy—can be resolved even under Rule 12(b)(6). Courts may consider materials properly judicially noticed on a Rule 12(b)(6) motion to dismiss without converting the motion into one for summary judgment. *Lee*, 250 F.3d at 688. Here, the bankruptcy schedule is appropriate for judicial notice. *C.B. v. Sonora Sch. Dist.*, 691 F. Supp. 2d 1123, 1138 (E.D. Cal. 2009) (A court "may take judicial notice of matters of public record, including duly recorded documents, and court records available to the public.").[2] Having determined that the document supporting this argument may be considered, the Court turns to the argument's merits in the discussion below.

## III. DISCUSSION

Defendant moves to dismiss the copyright claim because Plaintiff "failed to disclose" his purported copyright in the production bible "as an asset in his 2003 bankruptcy petition." MTD 12. Defendant claims this failure to disclose means both that (1) Plaintiff currently lacks standing because the asset still belongs to the bankruptcy estate, and (2) Plaintiff is judicially estopped from ever bringing any suit based on the undisclosed copyright. *Id.* The Court agrees that the first ground provides a basis for dismissal here.

"As a general matter, upon the filing of a petition for bankruptcy, 'all legal or equitable interests of the debtor in property' become the property of the bankruptcy estate and will be distributed to the debtor's creditors." *Rousey v.*

---

[2] Thus, the Court **GRANTS** Defendant's request for judicial notice of Plaintiff's bankruptcy schedule. *See* Dkt. Nos. 18, 18-1. The Court denies the requests for judicial notice of other materials not relevant to the limited scope of this order. *See* Dkt. Nos. 18, 25.

*Jacoway*, 544 U.S. 320, 325 (2005) (quoting 11 U.S.C. § 541(a)(1)). And the bankruptcy code places "an affirmative duty" on the debtor "to schedule his assets and liabilities." *Cusano v. Klein*, 264 F.3d 936, 945 (9th Cir. 2001). That duty requires the debtor "to prepare schedules carefully, completely, and accurately." *Id.* "If [the debtor] failed properly to schedule an asset, including a cause of action, that asset continues to belong to the bankruptcy estate and did not revert to [the debtor]." *Id.* at 945-46.

    A debtor's failure to properly schedule a copyright means the copyright "continue[s] to belong to the bankruptcy estate and [does] not revert" to the debtor. *Voss v. Knotts*, No. 11-CV-0842-H (WMC), 2012 WL 12846092, at *3 (S.D. Cal. May 29, 2012), *aff'd*, 570 F. App'x 720 (9th Cir. 2014). But under federal copyright law, "[a] plaintiff alleging copyright infringement must have an ownership interest in the subject copyrights, in order to have standing to bring the claim." *Id.*; *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991) (instructing that an infringement claim first requires "ownership of a valid copyright"). Accordingly, the failure to schedule the copyright during a bankruptcy means the debtor "has no ownership interest" and, thus, "lacks standing" to pursue an infringement claim. *Voss*, 2012 WL 12846092, at *3 (granting summary judgment on infringement claim where plaintiff failed to properly schedule copyright asset); *see Voss*, 570 F. App'x at 721 ("The district court did not err when it determined that because Voss had not listed his alleged copyright in his bankruptcy schedules, ownership of the asset remained in the bankruptcy estate and he lacked standing to pursue this action.") (footnotes omitted).

    Here, Plaintiff filed for Chapter 7 bankruptcy in 2003—after he created the production bible but before the *Muppet Babies* reboot. Dkt. 18-1 (Schedule) at 2. Defendant notes that, although the schedule requires itemization of "Patents, copyrights, and other intellectual property," Plaintiff did not identify any copyright or other interest in the production bible. MTD 5-6; *see* Schedule at 13-14. In response, Plaintiff submits a declaration that has the undeniable effect of conceding this omission, stating: "When I filed for bankruptcy in 2003, I did not know that I owned the copyrights to the Bible and the scripts I wrote." (Scott Decl. ¶ 5.) Having declared under oath that he did not know he owned the copyrights, Plaintiff cannot argue in good faith that he nonetheless disclosed his ownership rights.[3]

---

[3] Any appeal to Plaintiff's purported lack of sophistication or knowledge during the 2003 proceeding—whose legal significance is doubtful in light of the purpose and

Yet Plaintiff makes the argument. He argues that he "adequately disclosed the bible in his 2003 bankruptcy schedules" because he "generally listed '25 Story Ideas,'" which "put the bankruptcy trustee on sufficient notice to conduct an investigation to obtain more detail." Opp. 8. This argument not only contradicts Plaintiff's declaration, it also conflicts with the disclosure itself. Plaintiff did not disclose "25 Story Ideas," as asserted in the opposition brief. He listed (in pertinent part): "Twenty-five television series ideas (fourteen of which are co-owned with others). All have been marketed for sale between 1980 and 2003 without success." Schedule at 13-14. Plaintiff identified these items as having no "current market value." *Id.*

The "asset[s] as described" in the schedule cannot "reasonably be interpreted" to include the production bible. *Cusano*, 264 F.3d at 946. The *Muppet Babies* clearly was not a television series "marketed for sale . . . without success." According to Plaintiff's own allegations, the "production bible created and defined the foundational elements" of one of Disney's "most treasured animated properties, the *Muppet Babies* television show." Compl. ¶ 1, 3. The complaint also states Plaintiff received significant consideration for the production bible's creation: "In exchange for the bible, Marvel . . . promised Scott the right to write all episodes of the show and a royalty for each episode produced, whether or not he wrote it, and to afford him a 'Developed for Television By' credit on each episode produced." *Id.* ¶ 3. Plaintiff also claims he received "three Emmy Awards and a Humanitas Prize" for his role in the original run of the show. *Id.* ¶ 5.[4]

The Court concludes that Plaintiff failed to properly schedule his purported copyright or other related interest in the production bible. Because Plaintiff has no ownership interest in the Work or its purported copyrights, Plaintiff lacks standing to pursue the present lawsuit. *Voss*, 2012 WL 12846092, at *3. Anticipating this

---

operation of the bankruptcy laws—is undercut by the fact that Plaintiff was represented by counsel at the time. *See* Dkt. No. 22-9 (Hagen Decl.) ¶ 4.

[4] Plaintiff also submitted a declaration from his counsel who represented him in the bankruptcy case, Jeffrey Hagen. If considered, this declaration would only provide further support for the conclusion that the production bible was not disclosed. Mr. Hagen has a practice of preparing his "clients' bankruptcy schedules as thoroughly as possible." (Hagen Decl. ¶ 5.) Any thorough disclosure that attempted to capture a copyright interest in the production bible would not characterize the *Muppet Babies* as a television series marketed without success.

conclusion, Plaintiff "requests that the Court stay the instant action to provide [him] the opportunity to reopen the bankruptcy to address those matters without affecting the timeliness of any of his claims herein." Opp. 17. Defendant, by contrast, urges dismissal rather than "an indeterminate stay." Reply 10. Dismissal without prejudice appears to be the proper course. *See Simmers v. Nat'l R.R. Passenger Corp.*, No. CV 20-1548 (JEB), 2020 WL 7059631, at *3 (D.D.C. Dec. 2, 2020) ("As the Court finds no standing, it will dismiss the case without prejudice, which means that the trustee may renew the suit, or [plaintiff] may refile in the event the trustee subsequently abandons the claim."). Plaintiff's opposition cited no authority and provided no legal analysis that would suggest a stay should be granted here.[5]

At the hearing, Plaintiff argued that the Court has discretion to impose a stay pending further bankruptcy proceedings and that the usual factors governing a discretionary stay favors granting one here. *See, e.g.*, *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005) (describing framework for analyzing propriety of stay). But "the Copyright Act confers a bundle of exclusive rights to the owner of the copyright." *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 546 (1985). Thus, ownership is required to bring an infringement action. *Feist*, 499 U.S. at 361. To allow Plaintiff to file a complaint without standing and then seek out an ownership interest "would impermissibly expand the limited class of persons empowered by Congress to sue for infringement." *Quiedan Co. v. Cent. Valley Builders Supply Co.*, 31 F.3d 1178 (Fed. Cir. 1994) (table) (analyzing standing in patent case); *see Hallstrom v. Tillamook Cty.*, 493 U.S. 20, 31 (1989) ("As a general rule, if an action is barred by the terms of a statute, it must be dismissed."); *Righthaven*, 716 F.3d at 1171 (declining, in Article III context, "to permit[] standing based on a property interest [in copyright] acquired after filing").

Moreover, even if a stay were discretionary, the Court would not exercise its discretion here. The length of the stay would be indeterminate. At the hearing, Plaintiff's counsel estimated that the bankruptcy proceedings would take three-to-six months or longer and suggested periodic status conferences to consider extending the stay as necessary—a procedure that practically amounts to an

---

[5] In the event that Plaintiff is able to refile a copyright suit, he still will need to overcome Defendant's alternative arguments regarding judicial estoppel and the validity of the copyright claim. The Court, however, declines to evaluate the propriety of a claim for which Plaintiff currently has no standing to bring. *See Acri*, 114 F.3d at 1001 (deferring resolution of judicial estoppel argument until potential renewal of suit after plaintiff gained standing).

indefinite stay. Plaintiff's counsel also did not dispute that Plaintiff could have resolved the bankruptcy issue before filing this action but chose not to do so, a choice that is particularly troublesome given that the parties had entered into a prelitigation tolling agreement, during which time Plaintiff could have sought relief in the bankruptcy court. Any hardship suffered by Plaintiff for lack of a stay is therefore self-inflicted by failing to disclose his interest initially and then by subsequently neglecting to take prompt corrective action.[6]

The Court's dismissal of the copyright claim extinguishes the original basis for subject matter jurisdiction. "The Supreme Court has stated, and [the Ninth Circuit] ha[s] often repeated, that 'in the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.'" *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) (citation omitted). Weighing the relevant factors, the Court declines to exercise supplemental jurisdiction and dismisses the remaining state-law claims without prejudice. *See* 28 U.S.C. § 1367(c)(3)

### III.   CONCLUSION

The Court **GRANTS** the motion to dismiss as to Plaintiff's copyright infringement claim. The dismissal is **WITHOUT PREJUDICE** to either the bankruptcy trustee or Plaintiff re-filing the suit after any necessary bankruptcy proceedings. Because the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state-law claims, the claims for breach of contract, breach of implied contract, and fraud are **DISMISSED WITHOUT PREJUDICE**.

**IT IS SO ORDERED**.

---

[6] Nor is the Court convinced that Plaintiff has been acting in good faith at all times. There is no question that Plaintiff failed to disclose his interest in the production bible in the bankruptcy court. Rather than acknowledge this fact and seek immediate relief, Plaintiff argued that he had indeed disclosed his interest, which has only served to cause needless delay.