1            UNITED STATES DISTRICT COURT

2      CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

3           HONORABLE STANLEY BLUMENFELD, JR.

4         UNITED STATES DISTRICT JUDGE PRESIDING

5                    - - -

6
Jeffrey Scott,                    )
7                     PLAINTIFF,   )
                                   )
8  VS.                             )   NO. CV 20-9709 SB
                                   )
9  The Walt Disney Company,        )
                     DEFENDANT,    )
10 _____)

11

12

13       REPORTER'S TRANSCRIPT OF PROCEEDINGS

14            LOS ANGELES, CALIFORNIA

15          FRIDAY, MARCH 26, 2021

16

17

18     _____

19          KATIE E. THIBODEAUX, CSR 9858
            U.S. Official Court Reporter
20                 Suite 4311
            350 West 1st Street
21          Los Angeles, CA  90012

22

23

24

25

```
 1  APPEARANCES OF COUNSEL:

 2

 3  FOR PLAINTIFF:

 4  Stephen D. Rothschild

 5  King Holmes Paterno and Soriano LLP

 6  1900 Avenue of the Stars

 7  Twenty-Fifth Floor

 8  Los Angeles, CA 90067

 9

10  FOR DEFENDANT:

11  Erin Joan Cox

12  Brandon Martinez

13  Munger Tolles and Olson LLP

14  350 South Grand Avenue

15  Fiftieth Floor

16  Los Angeles, CA 90071-3426

17

18

19

20

21

22

23

24

25
```

```
 1          LOS ANGELES, CALIFORNIA; FRIDAY, MARCH 26, 2021

 2                         9:11 A.M.

 3                        - - - - -

 4

 5

 6       (The following proceedings were conducted via

 7        videoconference:)

 8       THE CLERK:  Calling item No. 4, Case

 9  No. CV 20-09709 SB, Jeffrey Scott versus The Walt Disney

10  Company, et al.

11          Counsel, please state your appearances

12  starting with plaintiff's counsel first.

13       MR. ROTHSCHILD:  Good morning, your Honor.  Steven

14  Rothschild for plaintiff.

15       THE COURT:  You are on mute, Ms. Cox.

16       MS. COX:  Good morning, your Honor.  Erin Cox from

17  Munger, Tolles and Olson, and I am joined by my

18  colleague, Brandon Martinez.

19       THE COURT:  Good morning, counsel.

20          Please make sure that no one is photographing,

21  recording, broadcasting or publishing these proceedings.

22          This is here on the defense motion to dismiss.

23  I have reviewed all of the papers and have issued a

24  tentative that focuses on a single ground, and that is

25  the failure to disclose in the bankruptcy schedule the
```

1    existence of this copyright.

2           So the tentative is against you,

3    Mr. Rothschild, if you do wish to be heard.  And as I

4    mentioned in the tentative, I do want to hear from the

5    parties with respect to whether the Court should dismiss

6    or stay.  The papers which by and large were generally

7    helpful did really not touch upon this issue at least to

8    the Court's satisfaction.

9           Anyhow, with that, Mr. Rothschild, you will

10   get to go, and you have a total of 10 minutes all in.

11      MR. ROTHSCHILD:  Thank you, your Honor.

12          Very quickly, I wanted to clarify this issue

13   of declarations about why it was or was not scheduled.

14   The issue, and perhaps this is my fault for not being as

15   clear as I could have, for us was not whether Mr. Scott

16   failed to schedule something called a registered

17   copyright.  He couldn't have done that because he did not

18   know that he had a copyrightable interest in the bible.

19   What he did do, and perhaps not as well as he could have,

20   is schedule his understanding that he had these ideas.

21   And he scheduled that generally.

22          And, in his declaration, one of the things he

23   points out, and this is at paragraph 6, is that he had

24   pitched to Henson Productions the idea of a Muppet Kids

25   show which would have been derived from the Muppet Baby

1    Show and, therefore, the bible.  So, I don't see those

2    two things as inconsistent.  I think what we were trying

3    to communicate was that he didn't schedule the copyright

4    because he did not know he had a copyright or something

5    he could register, but what he did do is say I have all

6    of these ideas, and one of those ideas was derived from

7    the bible.

8         And when you look at the schedule, as your

9    Honor pointed out in the tentative, the schedule category

10   is that copyrights, trademarks and patents, I think, and

11   other intellectual property.  So because he didn't

12   schedule it as a copyright doesn't mean that he didn't

13   intend to, at least whether he did so or not, to schedule

14   it as a piece of intellectual property.

15        THE COURT:  Mr. Rothschild, if I may interject.  I

16   read your papers.  Your papers make it clear that your

17   position is that he in fact disclosed it, he scheduled

18   it.  Whatever you might call it, whether it is a

19   copyright, whether it is another intellectual property

20   right.  Your papers unambiguously argue that he in fact

21   disclosed it.

22        Are you suggesting now something different?

23        MR. ROTHSCHILD:  No.  What I am suggesting is at

24   least as I read the tentative, your Honor's focus was on

25   whether he disclosed a copyright versus an interest in

1    the bible.  And what I am trying to communicate is, no,

2    he did not schedule a copyright because he didn't know he

3    had a copyright but that he did schedule story ideas or

4    series ideas and one of them was the idea that he had

5    pitched in 1989 to Henson which derived from the bible.

6        THE COURT:  All right.  And so you are making a

7    factual distinction, if I understand you, that doesn't

8    really have a legal -- any legal significance.  That is,

9    what I should do, you are suggesting, is to modify my

10   tentative to refer to this as an intellectual property

11   interest in the production bible rather than referring to

12   it as a copyright.

13       MR. ROTHSCHILD:  Well, and I know this isn't going

14   to persuade your Honor to change the tentative, but I did

15   want to address the suggestion that Mr. Scott or his

16   lawyers were not being candid.  I do not think that is

17   the case.  I think -- well, I know that certainly was not

18   the intention.  The intention was to distinguish between

19   a copyright and the ideas that spring from the bible.

20       THE COURT:  I mean, doesn't it follow,

21   Mr. Rothschild, just as a matter of logic, that your

22   client had a bankruptcy lawyer, and your bankruptcy

23   lawyer submitted a declaration which I am not necessarily

24   going to consider on a 12(b)(6) motion, but submitted a

25   declaration saying that he is obviously an expert in

1  bankruptcy law and in fact he is known and has an

2  industry reputation of being extremely thorough in

3  disclosure on these schedules.

4       And isn't it a reasonable inference that if

5  your client did not know that he essentially had an

6  interest in this intellectual property, in this

7  production bible that he wouldn't have disclosed it to

8  his lawyer who in turn would not have disclosed it in the

9  schedule?

10     MR. ROTHSCHILD:  I'm sorry, your Honor.  I am not

11 following your question.

12     THE COURT:  In other words, I am trying to

13 understand how it is that you can argue that this

14 interest was in fact disclosed when it seems like your

15 client's bankruptcy lawyer was unaware of its existence.

16     MR. ROTHSCHILD:  Well, I don't think the

17 declaration says he was unaware of its existence, but all

18 I can do is repeat what is in the declaration which was

19 that having a general description in the matter that was

20 done was sufficient to put the trustee on inquiry notice

21 if he wanted to know what these series ideas were.  And

22 if he had explored that, thought that it was of value to

23 explore it, he could have done so.

24       The fact is that in 2003, they did not have --

25 the Muppet issues did not have value.  The show was over,

1 and Mr. Scott had tried to sell the idea unsuccessfully

2 to Henson who was the only one that could exploit it.

3      THE COURT:  And, Mr. Rothschild, I certainly

4 appreciate that.  I did get that from the papers but not

5 to beat this too much to the ground but when I receive a

6 declaration from a lawyer, and the lawyer is purporting

7 to tell me what he did, specifically with regard to

8 schedule, and he makes no reference whatsoever to having

9 any knowledge about the existence of this production

10 bible but he tells me that he is known to be extremely

11 thorough, more thorough than most within his profession

12 in disclosure, can I draw any other interpretation other

13 than he didn't know about this interest since he didn't

14 disclose it?

15      MR. ROTHSCHILD:  Your Honor, I do want to move on

16 to the stay issue, and I know we have limited time.  I do

17 not think I have anything to add other than this was, you

18 know, nearly 20 years ago.  So I don't know whether they

19 recall the specific questions and answers -- (inaudible)

20 -- schedules.  But I think the more important issue, and

21 I wanted to address that only for the reasons I stated.

22 But I think the more important issue at this point is the

23 stay issue, and I would like a minute or two to address

24 that.

25      THE COURT:  Yes.

1          MR. ROTHSCHILD:  So there are two cases I would

2     like to draw your Honor's attention to.  One is CoinLab,

3     Inc..  That is 513 BR 576, a District Court case.  And

4     then the other--

5          THE COURT:  One second, please, Mr. Rothschild.

6     First of all, if any lawyer is referencing a case name

7     for my court reporter's benefit as well as my own, I

8     would like the spelling please.

9          MR. ROTHSCHILD:  Certainly.  CoinLab is

10    C-O-I-N-L-A-B Inc., I-N-C, versus Mt. Gox, M-O-U-N-T,

11    G-O-X-K-K(sic), and, again, that is 513 BR 576.

12          The second case is Barnes, B-A-R-N-E-S versus

13    Henry, H-E-N-R-Y, and that is 2017 WL 1158240, District

14    Court of Hawaii case.  Both of those cases talk about the

15    factors that courts consider when deciding whether to

16    grant a stay.

17          The first factor is fairness.  I think that in

18    this case it is fair to grant a stay of limited duration.

19    It would unfairly, I think without a stay, unfairly

20    injects new statute of limitations issues and none of

21    these facts have been adjudicated at this point.  There

22    are valid claims that haven't been tested.  And to make

23    those, inject a new defense into those claims I think

24    would be unfair to the plaintiff.

25          There is also evidence that failure to

1   schedule was an innocent mistake whenever it was

2   communicated because there was no anticipation of

3   these -- that the bible had any value at all.  And in

4   fact, it had no value until 15 years later.  The show was

5   over.  Mr. Scott had tried to pitch a similar idea

6   unsuccessfully.

7           The second factor the courts look at is

8   preservation of judicial resources and the orderly

9   administration of justice.  Without a short stay,

10  Mr. Scott will have to file a new case in state court to

11  assert at least state court claims that are new, many of

12  which involve many of the same factual issues as the case

13  that we are here today on.

14          I am told that the trustee is likely to make a

15  decision about how to handle this in at least relatively

16  short order, a few months, perhaps.  It is not a

17  situation where the stay would go on indefinitely or

18  potentially for a long time.  The likelihood is that the

19  trustee will either give Mr. Scott permission to pursue

20  the claim or the trustee will pursue the claim.  But in

21  either event that is likely to happen in the not too

22  distant future.

23          THE COURT:  Mr. Rothschild, when does the statute

24  of limitations run on one the claims that you would like

25  to pursue?

1      MR. ROTHSCHILD:  Well, the copyright claims are

2  three years.  The oral, slash, implied contract claims

3  are all two years.  I believe that the trigger date is

4  when Mr. Scott learned that they had used -- that Disney

5  had used his work.  And he didn't learn that until the

6  show started airing, and I believe that was in February,

7  2018.  And then there was some tolling agreements, but I

8  think we are pretty close at this point to the date that

9  this case was filed at least arguably.  And certainly

10  Disney has already raised the argument that because it

11  had a press release announcing a new, a reboot, that

12  should have triggered the statute of limitations.

13      THE COURT:  So would you agree that the only

14  viable claim you have is the copyright infringement

15  claim?

16      MR. ROTHSCHILD:  No.

17      THE COURT:  So didn't you say that the state

18  claims were two years and copyright is three?

19      MR. ROTHSCHILD:  I did.

20      THE COURT:  And so how are the other claims

21  viable?

22      MR. ROTHSCHILD:  Because of the tolling

23  agreements.

24      THE COURT:  And the statute hasn't run by the time

25  of the tolling agreements?

1          MR. ROTHSCHILD:  No.  Because there was no harm.

2          THE COURT:  All right.  And so just -- because I

3    have to wrap this up I really am looking for dates as to

4    when you believe the statute runs.

5               When is the date on the state claims?

6          MR. ROTHSCHILD:  Your Honor, I do not have those

7    dates in front of me.  It is within -- I think it is a

8    little more complicated than a specific date because

9    there is a rolling statute of limitations as the harms

10   accrue.  There is no royalties come due.  But the first

11   one would be two years from the date that the show aired

12   which I believe was in late February, 2018.

13              And there are these tolling agreements as

14   well.  If -- I would ask that I be permitted to file a

15   one page statement giving the dates, the relevant dates.

16         THE COURT:  All right.  At this point, I am going

17   to turn to Ms. Cox.  Ms. Cox, why shouldn't I stay this

18   matter?

19         MS. COX:  Certainly.  So having found that to the

20   extent Scott ever had a copyright interest in the show

21   bible, it is currently owned by the bankruptcy estate,

22   and entering a stay here would be inappropriate because

23   Mr. Scott, he lacks standing and we have two principles

24   at play here.

25              So, first -- and these are well established --

1   standing is determined as of the time that the lawsuit is

2   filed, so the fact that they exist at the time the

3   lawsuit is filed, and, secondly, the federal courts

4   consistently reject the notion that an event that

5   transpires after the filing of a complaint can cure the

6   lack of standing as of the time the complaint was filed.

7   　　　THE COURT:  Ms. Cox, are you referring to

8   Article III standing or what I would refer to as

9   statutory standing such as it appears we are dealing with

10  in this case?

11  　　　MS. COX:  Certainly.  So I can provide a number of

12  cases that deal with standing in terms of the Article III

13  standing.

14  　　　　So one case just to find a lot of these

15  principles for reference is going to be the Ninth

16  Circuit's 2015 decision in Yamada versus Snipes.  First

17  name is Y-A-M-A-D-A, and the citation is 786 F.3d 1182.

18  And that one is going to be an Article III issue where

19  although the lawsuit was filed at the point where the

20  plaintiff didn't have standing to challenge a walk but

21  during the pendency of the suit gained standing,

22  nonetheless dismissal was appropriate and nothing

23  precluded the plaintiff from bringing a future suit.

24  　　　THE COURT:  Do you have any non-Article III

25  standing cases where the Court has indicated that

1    granting a stay is not appropriate?

2         MS. COX:  Sure.  So, first, for something that I

3    think it would be analogous to this situation is looking

4    into patent law.

5              So there is, for instance, a case from the

6    Federal Circuit on a patent case arising out of the

7    Northern District of California, this one is Quiedan

8    company versus Central Valley Builders, Federal Circuit

9    1994 decision.  The cite is 31 F.3d 1178, and the first

10   name on that is Quiedan, Q-U-I-E-D-A-N.

11             So, in patent as in copyright, an exclusive

12   licensee may have standing to bring a suit for

13   infringement to protect their exclusive rights.  This is

14   similar to the -- for instance, in the Minden case.

15             So the Quiedan Court determined that an oral

16   agreement that purportedly gave the plaintiff an

17   exclusive license before the lawsuit was filed was

18   ineffective to do so.  So the plaintiff lacked standing

19   when it filed suit, and the Court held that, quote, the

20   parties' attempt to cure the defect in standing by a nunc

21   pro tunc license agreement also fails.  One may not

22   create standing --

23         THE COURT:  Slow down, please.

24         MS. COX:  Certainly.  One may not create standing

25   by later action if it did not exist at the time the suit

1   was brought.  To allow otherwise would, quote,

2   impermissibly expand a limited class of persons empowered

3   by Congress to sue for infringement.  And, there, it is

4   referencing specifically the patent statute which in

5   various ways is similar to the Copyright Act.

6           And, you know, this makes sense to allow an

7   assignment after a lawsuit is filed to automatically cure

8   a standing defect that existed at the initiation of the

9   lawsuit, that would invite premature initiations of

10  lawsuits.

11          You file, you represent to the Court that an

12  assignment is imminent, and the Court should just stay in

13  the meantime.  It would give nonowners the ability to sue

14  so long as they eventually gain the rights.

15          I would also direct your Honor to a case from

16  the US Supreme Court.  This is Hallstrom versus Tillamook

17  County.  First name is H-A-L-L-S-T-R-O-M, and the cite is

18  493 US 20.  This is from 1989.  So the Hallstrom case,

19  that makes clear that the rules are the same regardless

20  of whether this is seen as some statutory prerequisite to

21  filing or a true Article III jurisdictional issue.

22          So the Supreme Court addressed the plaintiff

23  who filed suit prematurely.  Specifically, there was a

24  governing statute which allowed individuals to sue to

25  force an environmental regulation so long as before they

1    did so they provided 60 days notice to the alleged

2    violater and to the EPA.  This particular plaintiff filed

3    suit before providing those 60 days notice.  So the

4    Supreme Court rejected the argument that instead of

5    dismissal of the lawsuit, quote, a 60-day stay would

6    serve the same function as delaying commencement of the

7    suit.

8          The Court noted that the plaintiffs, quote,

9    remain free to give notice and file their suit in

10   compliance with the statute to enforce pertinent

11   environmental standards.  The Court notably did not rule

12   that this was a jurisdictional issue stated that simply

13   being a matter of, you know, a statutory prerequisite was

14   enough.  And, although the Court expressed sympathy, I

15   think that was the word for the argument, that this would

16   be -- waste judicial resources, et cetera.

17         In that case, litigation had actually been

18   going on for years, and there was a decision on the

19   merits.  Nonetheless, the Court recognized that was the

20   rule that needed to be enforced even though in that

21   particular case it created inefficiencies.

22         So, the take away from all of these is that

23   even if the stay were instituted and Scott reopened the

24   1995 bankruptcy and convinced the trustee to give up a

25   hypothetical copyright interest and then reopen the 2003

1  bankruptcy and convince the trustee to give up the

2  hypothetical copyright interest, Scott could not revive

3  this action by coming back with his newfound standing.

4  That deficiency cannot be cured in this lawsuit.  If he

5  later gains ownership, he will need to initiate a new

6  lawsuit.  So for those reasons--

7       THE COURT:  And what case are you relying -- what

8  is the strongest case that you are relying upon that said

9  if even if I stay, you are saying that if the trustee

10  bows out that Mr. Scott still would have to file another

11  lawsuit.  Is that what you are indicating?

12       MS. COX:  Yes.  That he could not cure his lack of

13  standing whether you call it statutory or Article III in

14  this case by an event occurring after the filing of this

15  lawsuit.

16       THE COURT:  And are you suggesting all cases that

17  you have cited to the Court, the Yamada, the Quiedan, and

18  Hallstrom case all stand for that proposition?

19       MS. COX:  Yes.  And they touch on both -- Yamada

20  was specifically I would say -- the Quiedan case is in

21  the patent realm very much similar to this, and of course

22  the Hallstrom case from the Supreme Court deals with

23  something that is expressly not an Article III standing

24  issue, but simply applies the same principle.

25            I would also note that the Righthaven case

1   from the Ninth Circuit which is cited throughout the

2   briefs also noted that while there may be some exceptions

3   such as the decision dismissing a nondiverse party,

4   quote, permitting standing based on a property interest

5   acquired after filing is not one of them, and so that is

6   Righthaven at 1171.  So I think those four cases support

7   the notion that a stay is appropriate here in addition to

8   as your Honor saw in the Simmers case, the DC bankruptcy

9   case, that was the result reached as well.

10          THE COURT:  Righthaven is R-I-G-H-T-H-A-V-E-N.

11          Very briefly, Ms. Cox, it sounds like you

12   would land exclusively on the law, but if it, in fact, is

13   a discretionary matter for the Court to decide stay or

14   dismissal that I should stay this matter on the equities.

15   MS. COX:  No.  I believe it also makes sense

16   setting aside these principles to dismiss the suit.  What

17   we have here is an instance in which Mr. Scott, he does

18   not currently own the copyright.  To the extent one ever

19   existed in his name, he stopped owning it in 1995 when he

20   first entered bankruptcy.

21          To enter a stay, and we refer to it in our

22   papers, an indeterminate stay, to allow him to try to

23   manufacture jurisdiction by first going to the 1995

24   bankruptcy estate, going to the 2003 bankruptcy estate

25   and then coming back, you know, that would leave this

1   case pending on the docket and tie us up for an

2   unreasonable amount of time.

3           And, also, there is the possibility that one

4   of these bankruptcy trustees is going to decide they are

5   going to hold onto the claim and then pursue it.  There

6   are then issues for the bankruptcy trustee doing that if

7   their resolution is that they have to then intervene in

8   this case.  So there is similarly cases standing for the

9   proposition that a lack of standing at the outset of a

10  case cannot be cured by intervention by a plaintiff who

11  actually does have the claim.

12          Secondly, the bankruptcy trustee, they would

13  be intervening only for the purpose of -- well, I would

14  say probably the copyright claim, and then the

15  undisclosed original breach of contract claim.  There is

16  two other claims in that suit as well that you know, both

17  arose and relate to events in 2016.  Those are not

18  subject to the bankruptcy court's estate.

19          So it creates a procedural mess, and it would

20  all be much cleaner for the bankruptcy trustee if that is

21  the person who comes back to assert these claims as well

22  as the Court and the parties to just provide a clean

23  dismissal.

24          Mr. Scott is free to assert his state law

25  claims with the exception of the breach of contract claim

1   that likewise wasn't disclosed in state Court.

2        THE COURT:  All right.  Mr. Rothschild, I will

3   give you the last word.  I do want you to address first

4   of all there are two bankruptcy proceedings.  Do you

5   agree that you are going to have to go back with regard

6   to both of those trustees to get clearance?

7        MR. ROTHSCHILD:  Your Honor, not at this stage.

8   This is the first time that has been raised by the

9   defendant so, the schedules aren't -- I know the

10  schedules were attached to the reply, but I have not

11  studied those or been able at this point to investigate

12  background of that.  The issue hasn't been briefed.  So

13  not at this stage.

14            I think, though, that what the trustee is

15  going to do and how it is going to be handled at this

16  point is speculation that we will only know once the

17  trustee does that.  And, contrary to Disney's

18  characterization, Mr. Scott is not seeking an

19  indeterminate stay.  I think this issue could be resolved

20  in three to six months.  If at the end of that three to

21  six months, it turns out that Mr. Scott doesn't have

22  standing, then the case can be dismissed, or, if there is

23  another procedural mechanism to continue, that can be

24  addressed.

25            THE COURT:  And so what specifically are you

1   seeking?  You said you are not seeking an

2   indeterminate -- you seem like you are hedging here.  I

3   heard you previously say 90 days, and, now, you are

4   moving that to six months.  Isn't this going to be a

5   slippery slope.  If I stay this for 90 days, you are

6   going to come back and say we just need three more months

7   or two more months.  And you are going to keep coming

8   back and keep making this more difficult for me to say no

9   because now we have already invested three months, six

10   months, nine months, a year?

11        MR. ROTHSCHILD:  I don't think so, your Honor.  I

12   think if your Honor imposes grants a stay of determined

13   or of a specific period, and we come back, and we argue

14   that -- or present evidence that decision by the trustee

15   is imminent, Disney can say it has been too long, let's

16   stop or maybe we won't have evidence that a decision is

17   imminent and the decision by your Honor will be, is now

18   become indeterminate.  But we are not there yet.

19        THE COURT:  And, Mr. Rothschild, because I do need

20   to wind this up.  I have another matter that is waiting,

21   could you explain to me why this was not done during the

22   tolling period?  I mean, this seems like you got a

23   tolling agreement with Disney, and that would have been,

24   it seems to me, a very good time to go to the trustee and

25   work this out then.

```
 1          MR. ROTHSCHILD:  Your Honor, we made the arguments
 2     in our opposition.  We believed in the arguments.  Your
 3     Honor has rejected them, and that happens, but we didn't
 4     anticipate that would happen.
 5          THE COURT:  All right.  Do you have anything
 6     further -- I will give you another minute if you need to
 7     address anything.  Mr. Rothschild?
 8          MS. COX:  Yes.
 9          THE COURT:  No, no.  Mr. Rothschild.
10          MR. ROTHSCHILD:  Yes, your Honor.  On the stay I
11     just want to emphasize we are not asking for an
12     indefinite stay.  I tried to be clear on that when I
13     started talking about the rules regarding the stay.  We
14     are asking for a short, a relatively short stay, and I
15     just want to I guess emphasize that if we come back and
16     as your Honor put it hedge or if we don't have something
17     specific from the trustee indicating what is likely to
18     happen and when it is going to happen, there is nothing
19     your Honor has discretion at that point to determine
20     whether or not a further stay is appropriate or not.
21          THE COURT:  All right.  I am going to conclude
22     this.  Ms. Cox, I will give you 30 seconds, but it should
23     be corrective if necessary, not rearguments.
24          MS. COX:  Yes.  I was going to offer comments on
25     your Honor raised a question about whether or not there
```

1  was a conflict in the Ninth Circuit regarding the

2  12(b)(1) issue and there is not.  And I can in 20 seconds

3  point to a couple of things to help sort through that

4  issue.

5           So, in Minden, there actually -- it was a

6  matter of statutory standing.  There is no question.  The

7  defendant didn't contest, and the Court had no doubt that

8  the licensing agent had been transferred interest in a

9  legally cognizable right.  It was just about whether

10 under the statutory strictures they had standing to bring

11 suit.

12          Whereas, and that is the same issue in the

13 Wongab case.  Whereas in Righthaven and Warren, those

14 actually did present Article III lack of injury in fact

15 type of cases.  So in Warren it was a--

16      THE COURT:  Ms. Cox, really, that should have come

17 in your previous argument.  Is the bottom line that there

18 is no conflict, Minden Pictures controls?

19      MS. COX:  There is no conflict because they

20 address separate issues.  And Minden couldn't overrule

21 those cases in any event.  That could only be

22 accomplished through an en banc or Supreme Court

23 decision.

24      THE COURT:  I am generally familiar with that.  My

25 question is, of course, there could be a conflict when,

1    as in Minden Pictures, Minden doesn't address the

2    Righthaven or the Warren cases.  Hence, if they are

3    inconsistent, which the Court is not reaching, there

4    would be a conflict, not a purposeful one, as you are

5    suggesting, of course.  There couldn't be, at least not,

6    there shouldn't be.  But bottom line, Minden Pictures is

7    there is no issue with Righthaven or Warren because they

8    addressed Article III issues.  Minden Pictures is what

9    controls, and your client should not have brought the

10   case under 12(b)(1); correct?

11        MS. COX:  And our response to that is that this

12   case in which he never had an interest in an unauthorized

13   derivative work is on par with Warren and Righthaven and

14   not with Minden.

15        THE COURT:  And just real quickly, "yes" or "no",

16   did you specifically make that argument in your brief?

17        MS. COX:  No.  We raised the Warren and Righthaven

18   in our motion as they are on point, and there was no

19   response to that and we didn't address an issue that was

20   not raised in the opposition.

21        THE COURT:  Very well.  I understand.  That is a

22   fair point.  This matter is concluded.  I will take the

23   matter under submission specifically with regard to the

24   issue of the stay.

25            Thank you, counsel.

1          MR. ROTHSCHILD:  Thank you, your Honor.

2          MS. COX:  Thank you, your Honor.

3       (Proceedings concluded.)

```
 1                    CERTIFICATE

 2

 3

 4   I hereby certify that pursuant to Section 753, Title 28,

 5   United States Code, the foregoing is a true and correct

 6   transcript of the stenographically reported proceedings held

 7   in the above-entitled matter and that the transcript page

 8   format is in conformance with the regulations of the

 9   Judicial Conference of the United States.

10   Date:  March 31, 2021

11

12    /s/ Katie Thibodeaux, CSR No. 9858, RPR, CRR

13

14

15

16

17

18

19

20

21

22

23

24

25
```

MR. ROTHSCHILD: **[20]**
MS. COX: **[14]**
THE CLERK: **[1]**   3/7
THE COURT: **[32]**

**/**

**/s [1]**   26/12

**0**

**09709 [1]**   3/9

**1**

**10 [1]**   4/10
**1158240 [1]**   9/13
**1171 [1]**   18/6
**1178 [1]**   14/9
**1182 [1]**   13/17
**12 [3]**   6/24 23/2 24/10
**15 [1]**   10/4
**1900 [1]**   2/6
**1989 [2]**   6/5 15/18
**1994 [1]**   14/9
**1995 [3]**   16/24 18/19 18/23
**1st [1]**   1/20

**2**

**20 [3]**   8/18 15/18 23/2
**20-9709 [1]**   1/8
**2003 [3]**   7/24 16/25 18/24
**2015 [1]**   13/16
**2016 [1]**   19/17
**2017 [1]**   9/13
**2018 [2]**   11/7 12/12
**2021 [3]**   1/15 3/1 26/10
**26 [2]**   1/15 3/1
**28 [1]**   26/4

**3**

**30 [1]**   22/22
**31 [2]**   14/9 26/10
**3426 [1]**   2/16
**350 [2]**   1/20 2/14

**4**

**4311 [1]**   1/20
**493 [1]**   15/18

**5**

**513 [2]**   9/3 9/11
**576 [2]**   9/3 9/11

**6**

**60 [2]**   16/1 16/3
**60-day [1]**   16/5

**7**

**753 [1]**   26/4
**786 [1]**   13/17

**9**

**90 [2]**   21/3 21/5
**90012 [1]**   1/21
**90067 [1]**   2/8
**90071-3426 [1]**   2/16
**9709 [1]**   1/8
**9858 [2]**   1/19 26/12
**9:11 [1]**   3/2

**A**

**A.M [1]**   3/2
**ability [1]**   15/13
**able [1]**   20/11
**about [8]**   4/13 8/9 8/13 9/14
 10/15 22/13 22/25 23/9
**above [1]**   26/7
**above-entitled [1]**   26/7
**accomplished [1]**   23/22

**accrue [1]**   12/10
**acquired [1]**   12/3
**Act [1]**   15/5
**action [2]**   14/25 17/3
**actually [4]**   16/17 19/11
 23/5 23/14
**add [1]**   8/17
**addition [1]**   18/7
**address [8]**   6/15 8/21 8/23
 20/3 22/7 23/20 24/1 24/19
**addressed [3]**   15/22 20/24
 24/8
**adjudicated [1]**   9/21
**administration [1]**   10/9
**after [4]**   13/5 15/7 17/14
 18/5
**again [1]**   9/11
**against [1]**   4/2
**agent [1]**   23/8
**ago [1]**   8/18
**agree [2]**   11/13 20/5
**agreement [3]**   14/16 14/21
 21/23
**agreements [4]**   11/7 11/23
 11/25 12/13
**aired [1]**   12/11
**airing [1]**   11/6
**al [1]**   3/10
**all [18]**
**alleged [1]**   16/1
**allow [3]**   15/1 15/6 18/22
**allowed [1]**   15/24
**already [2]**   11/10 21/9
**also [7]**   9/25 14/21 15/15
 17/25 18/2 18/15 19/3
**although [2]**   13/19 16/14
**am [11]**   3/17 5/23 6/1 6/23
 7/10 7/12 10/14 12/3 12/16
 22/21 23/24
**amount [1]**   19/2
**analogous [1]**   14/3
**ANGELES [5]**   1/14 1/21 2/8
 2/16 3/1
**announcing [1]**   11/11
**another [5]**   5/19 17/10 20/23
 21/20 22/6
**answers [1]**   8/19
**anticipate [1]**   22/4
**anticipation [1]**   10/2
**any [7]**   6/8 8/9 8/12 9/6
 10/3 13/24 23/21
**Anyhow [1]**   4/9
**anything [3]**   8/17 22/5 22/7
**appearances [2]**   2/1 3/11
**appears [1]**   13/9
**applies [1]**   17/24
**appreciate [1]**   8/4
**appropriate [4]**   13/22 14/1
 18/7 22/20
**are [39]**
**aren't [1]**   20/9
**arguably [1]**   11/9
**argue [3]**   5/20 7/13 21/13
**argument [5]**   11/10 16/4
 16/15 23/17 24/16
**arguments [2]**   22/1 22/2
**arising [1]**   14/6
**arose [1]**   19/17
**Article [9]**   13/8 13/12 13/18
 13/24 15/21 17/13 17/23
 23/14 24/8
**Article III [1]**   13/8
**as [38]**
**aside [1]**   18/16
**ask [1]**   12/14
**asking [2]**   22/11 22/14
**assert [3]**   10/11 19/21 19/24
**assignment [2]**   15/7 15/12
**attached [1]**   20/10

**attempt [1]**   14/20
**attention [1]**   22/23
**automatically [1]**   15/7
**Avenue [2]**   2/6 2/14
**away [1]**   16/22

**B**

**B-A-R-N-E-S [1]**   9/12
**Baby [1]**   4/25
**back [8]**   17/3 18/25 19/21
 20/5 21/6 21/8 21/13 22/15
**background [1]**   20/12
**banc [1]**   23/22
**bankruptcy [18]**
**Barnes [1]**   9/12
**based [1]**   18/4
**be [29]**
**beat [1]**   8/5
**because [15]**
**become [1]**   21/18
**been [10]**   4/25 9/21 9/22
 16/17 20/8 20/11 20/12 21/15
 21/23 23/8
**before [3]**   14/17 15/25 16/3
**being [4]**   4/14 6/16 7/2
 16/13
**believe [5]**   11/3 11/6 12/4
 12/12 18/15
**believed [1]**   22/2
**benefit [1]**   9/7
**between [1]**   6/18
**bible [11]**   4/18 5/1 5/7 6/1
 6/5 6/11 6/19 7/7 8/10 10/3
 12/21
**BLUMENFELD [1]**   1/3
**both [4]**   9/14 17/19 19/16
 20/6
**bottom [2]**   23/17 24/6
**bows [1]**   17/10
**BR [2]**   9/3 9/11
**Brandon [2]**   2/12 3/18
**breach [2]**   19/15 19/25
**brief [1]**   24/16
**briefed [1]**   20/12
**briefly [1]**   18/11
**briefs [1]**   18/2
**bring [2]**   14/12 23/10
**bringing [1]**   13/23
**broadcasting [1]**   3/21
**brought [2]**   15/1 24/9
**Builders [1]**   14/8

**C**

**C-O-I-N-L-A-B [1]**   9/10
**CA [3]**   1/21 2/8 2/16
**CALIFORNIA [4]**   1/2 1/14 3/1
 14/7
**call [2]**   5/18 17/13
**called [1]**   4/16
**Calling [1]**   3/8
**can [9]**   7/13 7/18 8/12 13/5
 13/11 20/22 20/23 21/15 23/2
**candid [1]**   6/16
**cannot [2]**   17/4 19/10
**case [35]**
**cases [10]**   9/1 9/14 13/12
 13/25 17/16 18/6 19/8 23/15
 23/21 24/2
**category [1]**   5/9
**CENTRAL [2]**   1/2 14/8
**certainly [7]**   6/17 8/3 9/9
 11/9 12/19 13/11 14/24
**CERTIFICATE [1]**   26/1
**certify [1]**   26/4
**cetera [1]**   16/16
**challenge [1]**   13/20
**change [1]**   6/14
**characterization [1]**   20/18

**C**

Circuit **[4]** 14/6 14/8 18/1
23/1
Circuit's **[1]** 13/16
citation **[1]** 13/17
cite **[2]** 14/9 15/17
cited **[2]** 17/17 18/1
claim **[9]** 10/20 10/20 11/14
11/15 19/5 19/11 19/14 19/15
19/25
claims **[12]** 9/22 9/23 10/11
10/24 11/1 11/2 11/18 11/20
12/5 19/16 19/21 19/25
clarify **[1]** 4/12
class **[1]** 15/2
clean **[1]** 19/22
cleaner **[1]** 19/20
clear **[4]** 4/15 5/16 15/19
22/12
clearance **[1]** 20/6
client **[3]** 6/22 7/5 24/9
client's **[1]** 7/15
close **[1]** 11/8
Code **[1]** 26/5
cognizable **[1]** 23/9
CoinLab **[2]** 9/2 9/9
colleague **[1]** 3/18
come **[5]** 12/10 21/6 21/13
22/15 23/16
comes **[1]** 19/21
coming **[3]** 17/3 18/25 21/7
commencement **[1]** 16/6
comments **[1]** 22/24
communicate **[2]** 5/3 6/1
communicated **[1]** 10/2
company **[3]** 1/9 3/10 14/8
complaint **[2]** 13/5 13/6
compliance **[1]** 16/10
complicated **[1]** 12/8
conclude **[1]** 22/21
concluded **[2]** 24/22 25/3
conducted **[1]** 3/6
Conference **[1]** 26/9
conflict **[5]** 23/1 23/18
23/19 23/25 24/4
conformance **[1]** 26/8
Congress **[1]** 15/3
consider **[2]** 6/24 9/15
consistently **[1]** 13/4
contest **[1]** 23/7
continue **[1]** 20/23
contract **[3]** 11/2 19/15
19/25
contrary **[1]** 20/17
controls **[2]** 23/18 24/9
convince **[1]** 17/1
convinced **[1]** 16/24
copyright **[21]**
copyrightable **[1]** 4/18
copyrights **[1]** 5/10
correct **[2]** 24/10 26/5
corrective **[1]** 22/23
could **[11]** 4/15 4/19 5/5
7/23 8/2 17/2 17/12 20/19
21/21 23/21 23/25
couldn't **[3]** 4/17 23/20 24/5
counsel **[5]** 2/1 3/11 3/12
3/19 24/25
County **[1]** 15/17
couple **[1]** 23/3
course **[3]** 17/21 23/25 24/5
court **[28]**
court's **[2]** 4/8 19/18
courts **[3]** 9/15 10/7 13/3
Cox **[9]** 2/11 3/15 3/16 12/7
12/17 13/7 18/11 22/22 23/16
create **[2]** 14/22 14/24
created **[1]** 16/21

creates **[1]** 19/19
CSR **[2]** 1/19 26/12
cure **[4]** 13/5 14/20 15/7
17/12
cured **[2]** 17/4 19/10
currently **[2]** 12/21 18/18
CV **[2]** 1/8 3/9

**D**

date **[6]** 11/3 11/8 12/5 12/8
12/11 26/10
dates **[4]** 12/3 12/7 12/15
12/23
day **[1]** 16/5
days **[4]** 16/1 16/3 21/3 21/5
DC **[1]** 18/8
deal **[1]** 13/12
dealing **[1]** 13/9
deals **[1]** 17/22
decide **[2]** 18/13 19/4
deciding **[1]** 9/15
decision **[9]** 10/15 13/16
14/9 16/18 18/3 21/14 21/16
21/17 23/23
declaration **[6]** 4/22 6/23
6/25 7/17 7/18 8/6
declarations **[1]** 4/13
defect **[2]** 14/20 15/8
defendant **[4]** 1/9 2/10 20/9
23/7
defense **[2]** 3/22 9/23
deficiency **[1]** 17/4
delaying **[1]** 16/6
derivative **[1]** 24/13
derived **[3]** 4/25 5/6 6/5
description **[1]** 7/19
determine **[1]** 22/19
determined **[3]** 13/1 14/15
21/12
did **[20]**
didn't **[12]** 5/3 5/11 5/12
6/2 8/13 8/13 11/5 11/17
13/20 22/3 23/7 24/19
different **[1]** 5/22
difficult **[1]** 21/8
direct **[1]** 15/15
disclose **[2]** 3/25 8/14
disclosed **[7]** 5/17 5/21 5/25
7/7 7/8 7/14 20/1
disclosure **[2]** 7/3 8/12
discretion **[1]** 22/19
discretionary **[1]** 18/13
dismiss **[3]** 3/22 4/5 18/16
dismissal **[4]** 13/22 16/5
18/14 19/23
dismissed **[1]** 20/22
dismissing **[1]** 18/3
Disney **[6]** 1/9 3/9 11/4
11/10 21/15 21/23
Disney's **[1]** 20/17
distant **[1]** 10/22
distinction **[1]** 6/7
distinguish **[1]** 6/18
DISTRICT **[6]** 1/1 1/2 1/4 9/3
9/13 14/7
DIVISION **[1]** 1/2
docket **[1]** 19/1
does **[4]** 10/23 18/17 19/11
20/17
doesn't **[5]** 5/12 6/7 6/20
20/21 24/1
doing **[1]** 19/6
don't **[5]** 5/1 7/16 8/18
21/11 22/16
done **[4]** 4/17 7/20 7/23
21/21
doubt **[1]** 23/7

down **[1]** 14/23
draw **[1]** 8/8
due **[1]** 12/10
duration **[1]** 9/18
during **[2]** 13/21 21/21

**E**

either **[2]** 10/19 10/21
emphasize **[2]** 22/11 22/15
empowered **[1]** 15/2
en **[1]** 23/22
end **[1]** 20/20
enforce **[1]** 16/10
enforced **[1]** 16/20
enough **[1]** 16/14
enter **[1]** 18/21
entered **[1]** 18/20
entering **[1]** 12/22
entitled **[1]** 26/7
environmental **[2]** 15/25
16/11
EPA **[1]** 16/2
equities **[1]** 18/14
Erin **[2]** 2/11 3/16
essentially **[1]** 7/5
established **[1]** 12/25
estate **[4]** 12/21 18/24 18/24
19/18
et **[2]** 3/10 16/16
even **[3]** 16/20 16/23 17/9
event **[4]** 10/21 13/4 17/14
23/21
events **[1]** 19/17
eventually **[1]** 15/14
ever **[2]** 12/20 18/18
evidence **[3]** 9/25 21/14
21/16
exception **[1]** 19/25
exceptions **[1]** 18/2
exclusive **[3]** 14/11 14/13
14/17
exclusively **[1]** 18/12
exist **[2]** 13/2 14/25
existed **[2]** 15/8 18/19
existence **[4]** 4/1 7/15 7/17
8/9
expand **[1]** 15/2
expert **[1]** 6/25
explain **[1]** 21/21
exploit **[1]** 8/2
explore **[1]** 7/23
explored **[1]** 7/23
expressed **[1]** 16/14
expressly **[1]** 17/23
extent **[2]** 12/20 18/18
extremely **[2]** 7/2 8/10

**F**

F.3d **[2]** 13/17 14/9
fact **[9]** 5/17 5/20 7/1 7/14
7/24 10/4 13/2 18/12 23/14
factor **[2]** 9/17 10/7
factors **[1]** 9/15
facts **[1]** 9/21
factual **[2]** 6/7 10/12
failed **[1]** 4/16
fails **[1]** 14/21
failure **[2]** 3/25 9/25
fair **[2]** 9/18 24/22
fairness **[1]** 9/17
familiar **[1]** 23/24
fault **[1]** 4/14
February **[2]** 11/6 12/12
federal **[3]** 13/3 14/6 14/8
few **[1]** 10/16
Fifth **[1]** 2/7
Fiftieth **[1]** 2/15
file **[5]** 10/10 12/14 15/11

## F

**file ... [2]**   16/9 17/10
**filed [10]**   11/9 13/2 13/3
13/6 13/19 14/17 14/19 15/7
15/23 16/2
**filing [4]**   13/5 15/21 17/14
18/5
**find [1]**   13/14
**first [13]**   3/12 9/6 9/17
12/10 12/25 13/16 14/2 14/9
15/17 18/20 18/23 20/3 20/8
**Floor [2]**   2/7 2/15
**focus [1]**   5/24
**focuses [1]**   3/24
**follow [1]**   6/20
**following [2]**   3/6 7/11
**force [1]**   15/25
**foregoing [1]**   26/5
**format [1]**   26/8
**found [1]**   12/19
**four [1]**   18/8
**free [2]**   16/9 19/24
**FRIDAY [2]**   1/15 3/1
**front [1]**   12/7
**function [1]**   16/6
**further [2]**   22/6 22/20
**future [2]**   10/22 13/23

## G

**G-O-X-K-K [1]**   9/11
**gain [1]**   15/14
**gained [1]**   13/21
**gains [1]**   17/5
**gave [1]**   14/16
**general [1]**   7/19
**generally [3]**   4/6 4/21 23/24
**get [3]**   4/10 8/4 20/6
**give [8]**   10/19 15/13 16/9
16/24 17/1 20/3 22/6 22/22
**giving [1]**   12/15
**go [4]**   4/10 10/17 20/5 21/24
**going [19]**
**good [4]**   3/13 3/16 3/19
21/24
**got [1]**   21/22
**governing [1]**   15/24
**Gox [1]**   9/10
**Grand [1]**   2/14
**grant [2]**   9/16 9/18
**granting [1]**   14/1
**grants [1]**   21/12
**ground [2]**   3/24 8/5
**guess [1]**   22/15

## H

**H-A-L-L-S-T-R-O-M [1]**   15/17
**H-E-N-R-Y [1]**   9/13
**had [22]**
**Hallstrom [4]**   15/16 15/18
17/18 17/22
**handle [1]**   10/15
**handled [1]**   20/15
**happen [4]**   10/21 22/4 22/18
22/18
**happens [1]**   22/3
**harm [1]**   12/1
**harms [1]**   12/9
**has [7]**   7/1 11/10 13/25 20/8
21/15 22/3 22/19
**hasn't [2]**   11/24 20/12
**have [42]**
**haven't [1]**   9/22
**having [3]**   7/19 8/8 12/19
**Hawaii [1]**   9/14
**he [49]**
**hear [1]**   4/4
**heard [2]**   4/3 21/3
**hedge [1]**   22/16
**hedging [1]**   21/2
**help [1]**   23/3
**helpful [1]**   4/7
**Hence [1]**   24/2
**Henry [1]**   9/13
**Henson [3]**   4/24 6/5 8/2
**here [7]**   3/22 10/13 12/22
12/24 18/7 18/17 21/2
**hereby [1]**   26/4
**him [1]**   18/22
**his [9]**   4/20 4/22 6/15 7/8
8/11 11/5 17/12 18/19 19/24
**hold [1]**   19/5
**Holmes [1]**   2/5
**Honor [22]**
**Honor's [2]**   5/24 9/2
**HONORABLE [1]**   1/3
**how [4]**   7/13 10/15 11/20
20/15
**hypothetical [2]**   16/25 17/2

## I

**I'm [1]**   7/10
**I-N-C [1]**   9/10
**idea [4]**   4/24 6/4 8/1 10/5
**ideas [7]**   4/20 5/6 5/6 6/3
6/4 6/19 7/21
**III [9]**   13/8 13/12 13/18
13/24 15/21 17/13 17/23
23/14 24/8
**imminent [3]**   15/12 21/15
21/17
**impermissibly [1]**   15/2
**implied [1]**   11/2
**important [2]**   8/20 8/22
**imposes [1]**   21/12
**inappropriate [1]**   12/22
**inaudible [1]**   8/19
**Inc [2]**   9/3 9/10
**inconsistent [2]**   5/2 24/3
**indefinite [1]**   22/12
**indefinitely [1]**   10/17
**indeterminate [4]**   18/22
20/19 21/2 21/18
**indicated [1]**   13/25
**indicating [2]**   17/11 22/17
**individuals [1]**   15/24
**industry [1]**   7/2
**ineffective [1]**   14/18
**inefficiencies [1]**   16/21
**inference [1]**   7/4
**infringement [3]**   11/14 14/13
15/3
**initiate [1]**   17/5
**initiation [1]**   15/8
**initiations [1]**   15/9
**inject [1]**   9/23
**injects [1]**   9/20
**injury [1]**   23/14
**innocent [1]**   10/1
**inquiry [1]**   7/20
**instance [3]**   14/5 14/14
18/17
**instead [1]**   16/4
**instituted [1]**   16/23
**intellectual [5]**   5/11 5/14
5/19 6/10 7/6
**intend [1]**   5/13
**intention [2]**   6/18 6/18
**interest [12]**   4/18 5/25 6/11
7/6 7/14 8/13 12/20 16/25
17/2 18/4 23/8 24/12
**interject [1]**   5/15
**interpretation [1]**   8/12
**intervene [1]**   19/7
**intervening [1]**   19/13
**intervention [1]**   19/10
**invested [1]**   21/9
**investigate [1]**   20/11
**involve [1]**   10/12
**is [125]**
**isn't [3]**   6/13 7/4 21/4
**issue [19]**
**issued [1]**   3/23
**issues [6]**   7/25 9/20 10/12
19/6 23/20 24/8
**it [56]**
**item [1]**   3/8
**its [2]**   7/15 7/17

## J

**Jeffrey [2]**   1/6 3/9
**Joan [1]**   2/11
**joined [1]**   3/17
**JR [1]**   1/3
**JUDGE [1]**   1/4
**judicial [3]**   10/8 16/16 26/9
**jurisdiction [1]**   18/23
**jurisdictional [2]**   15/21
16/12
**just [10]**   6/21 12/2 13/14
15/12 19/22 21/6 22/11 22/15
23/9 24/15
**justice [1]**   10/9

## K

**KATIE [2]**   1/19 26/12
**keep [2]**   21/7 21/8
**Kids [1]**   4/24
**King [1]**   2/5
**know [17]**
**knowledge [1]**   8/9
**known [2]**   7/1 8/10

## L

**lack [4]**   13/6 17/12 19/9
23/14
**lacked [1]**   14/18
**lacks [1]**   12/23
**land [1]**   18/12
**large [1]**   4/6
**last [1]**   20/3
**late [1]**   12/12
**later [3]**   10/4 14/25 17/5
**law [4]**   7/1 14/4 18/12 19/24
**lawsuit [11]**   13/1 13/3 13/19
14/17 15/7 15/9 16/5 17/4
17/6 17/11 17/15
**lawsuits [1]**   15/10
**lawyer [7]**   6/22 6/23 7/8
7/15 8/6 8/6 8/9 9/6
**lawyers [1]**   6/16
**learn [1]**   11/5
**learned [1]**   11/4
**least [7]**   4/7 5/13 5/24
10/11 10/15 11/9 24/5
**leave [1]**   18/25
**legal [2]**   6/8 6/8
**legally [1]**   23/9
**let's [1]**   21/15
**license [2]**   14/17 14/21
**licensee [1]**   14/12
**licensing [1]**   23/8
**like [8]**   7/14 8/23 9/2 9/8
10/24 18/11 21/2 21/22
**likelihood [1]**   10/18
**likely [3]**   10/14 10/21 22/17
**likewise [1]**   20/1
**limitations [4]**   9/20 10/24
11/12 12/9
**limited [3]**   8/16 9/18 15/2
**line [2]**   23/17 24/6
**litigation [1]**   16/17
**little [1]**   12/8
**LLP [2]**   2/5 2/13

**L**
logic [1]   6/21
long [4]   10/18 15/14 15/25 21/15
look [2]   5/8 10/7
looking [2]   12/3 14/3
LOS [5]   1/14 1/21 2/8 2/16 3/1
lot [1]   13/14

**M**
M-O-U-N-T [1]   9/10
made [1]   22/1
make [5]   3/20 5/16 9/22 10/14 24/16
makes [4]   8/8 15/6 15/19 18/15
making [2]   6/6 21/8
manufacture [1]   18/23
many [2]   10/11 10/12
MARCH [3]   1/15 3/1 26/10
Martinez [2]   2/12 3/18
matter [11]   6/21 7/19 12/18 16/13 18/13 18/14 21/20 23/6 24/22 24/23 26/7
may [5]   5/15 14/12 14/21 14/24 18/2
maybe [1]   21/16
me [6]   8/7 8/10 12/7 21/8 21/21 21/24
mean [3]   5/12 6/20 21/22
meantime [1]   15/13
mechanism [1]   20/23
mentioned [1]   4/4
merits [1]   16/19
mess [1]   19/19
might [1]   5/18
Minden [9]   14/14 23/5 23/18 23/20 24/1 24/1 24/6 24/8 24/14
minute [2]   8/23 22/6
minutes [1]   4/10
mistake [1]   10/1
modify [1]   6/9
months [9]   10/16 20/20 20/21 21/4 21/6 21/7 21/9 21/10 21/10
more [7]   8/11 8/20 8/22 12/8 21/6 21/7 21/8
morning [3]   3/13 3/16 3/19
most [1]   8/11
motion [3]   3/22 6/24 24/18
move [1]   8/15
moving [1]   21/4
Mr. [24]
Mr. Rothschild [11]   4/3 4/9 5/15 6/21 8/3 9/5 10/23 20/2 21/19 22/7 22/9
Mr. Scott [13]   4/15 6/15 8/1 10/5 10/10 10/19 11/4 12/23 17/10 18/17 19/24 20/18 20/21
Ms. [7]   3/15 12/17 12/17 13/7 18/11 22/22 23/16
Ms. Cox [7]   3/15 12/17 12/17 13/7 18/11 22/22 23/16
Mt [1]   9/10
much [3]   8/5 17/21 19/20
Munger [2]   2/13 3/17
Muppet [3]   4/24 4/25 7/25
mute [1]   3/15
my [6]   3/17 4/14 6/9 9/7 9/7 23/24

**N**
name [5]   9/6 13/17 14/10 15/17 18/19
nearly [1]   8/18

necessarily [1]   6/23
necessary [1]   7/9
need [4]   17/5 21/6 21/19 22/6
needed [1]   16/20
never [1]   24/12
new [6]   9/20 9/23 10/10 10/11 11/11 17/5
newfound [1]   17/3
nine [1]   21/10
Ninth [3]   13/15 18/1 23/1
no [24]
No. [2]   3/8 3/9
No. 4 [1]   3/8
No. CV 20-09709 [1]   3/9
non [1]   13/24
non-Article [1]   13/24
nondiverse [1]   18/3
none [1]   9/20
nonetheless [2]   13/22 16/19
nonowners [1]   15/13
Northern [1]   14/7
not [53]
notably [1]   16/11
note [1]   17/25
noted [2]   16/8 18/2
nothing [2]   13/22 22/18
notice [4]   7/20 16/1 16/3 16/9
notion [2]   13/4 18/7
now [4]   5/22 21/3 21/9 21/17
number [1]   13/11
nunc [1]   14/20

**O**
obviously [1]   6/25
occurring [1]   17/14
offer [1]   22/24
Official [1]   1/19
Olson [2]   2/13 3/17
once [1]   20/16
one [19]
only [6]   8/2 8/21 11/13 19/13 20/16 23/21
opposition [2]   22/2 24/20
oral [2]   11/2 14/15
order [1]   10/16
orderly [1]   10/8
original [1]   19/15
other [8]   5/11 7/12 8/12 8/12 8/17 9/4 11/20 19/16
otherwise [1]   15/1
our [4]   18/21 22/2 24/11 24/18
out [6]   4/23 5/9 14/6 17/10 20/21 21/25
outset [1]   19/9
over [2]   7/25 10/5
overrule [1]   23/20
own [2]   9/7 18/18
owned [1]   12/21
ownership [1]   17/5
owning [1]   18/19

**P**
page [2]   12/15 26/7
papers [7]   3/23 4/6 5/16 5/16 5/20 8/4 18/22
par [1]   24/13
paragraph [1]   4/23
paragraph 6 [1]   4/23
particular [2]   16/2 16/21
parties [2]   4/5 19/22
parties' [1]   14/20
party [1]   18/3
patent [5]   14/4 14/6 14/11 15/4 17/21
patents [1]   5/10

Paterno [1]   2/5
pendency [1]   21/16
pending [1]   19/1
perhaps [3]   4/14 4/19 10/16
period [2]   21/13 21/22
permission [1]   10/19
permitted [1]   12/14
permitting [1]   18/4
person [1]   19/21
persons [1]   15/2
persuade [1]   6/14
pertinent [1]   16/10
photographing [1]   3/20
Pictures [4]   23/18 24/1 24/6 24/8
piece [1]   5/14
pitch [1]   10/5
pitched [2]   4/24 6/5
plaintiff [11]   1/7 2/3 3/14 9/24 13/20 13/23 14/16 14/18 15/22 16/2 19/2 19/10
plaintiff's [1]   3/12
plaintiffs [1]   16/8
play [1]   12/24
please [5]   3/11 3/20 9/5 9/8 14/23
point [11]   8/22 9/21 11/8 12/16 13/19 20/11 20/16 22/19 23/3 24/18 24/22
pointed [1]   5/9
points [1]   4/23
position [1]   5/17
possibility [1]   19/3
potentially [1]   10/18
precluded [1]   13/23
premature [1]   15/9
prematurely [1]   15/23
prerequisite [2]   15/20 16/13
present [2]   21/14 23/14
preservation [1]   10/8
PRESIDING [1]   1/4
press [1]   11/11
pretty [1]   11/8
previous [1]   23/17
previously [1]   21/3
principle [1]   17/24
principles [3]   12/23 13/15 18/16
pro [1]   14/21
probably [1]   19/14
procedural [2]   19/19 20/23
proceedings [6]   1/13 3/6 3/21 20/4 25/3 26/6
production [3]   6/11 7/7 8/9
Productions [1]   4/24
profession [1]   8/11
property [6]   5/11 5/14 5/19 6/10 7/6 18/4
proposition [2]   17/18 19/9
protect [1]   14/13
provide [2]   13/11 19/22
provided [1]   16/1
providing [1]   16/3
publishing [1]   3/21
purportedly [1]   14/16
purporting [1]   8/6
purpose [1]   19/13
purposeful [1]   24/4
pursuant [1]   26/4
pursue [4]   10/19 10/20 10/25 19/5
put [2]   7/20 22/16

**Q**
Q-U-I-E-D-A-N [1]   14/10
question [4]   7/11 22/25 23/6 23/25
questions [1]   8/19
quickly [2]   4/12 24/15

**Q**

**Quiedan [5]**   14/7 14/10 14/15
17/17 17/20
**quote [5]**   14/19 15/1 16/5
16/8 18/4

**R**

**R-I-G-H-T-H-A-V-E-N [1]**
18/10
**raised [5]**   11/10 20/8 22/25
24/17 24/20
**rather [1]**   6/11
**reached [1]**   18/9
**reaching [1]**   24/3
**read [2]**   5/16 5/24
**real [1]**   24/15
**really [4]**   4/7 6/8 12/3
23/16
**realm [1]**   17/21
**rearguments [1]**   22/23
**reasonable [1]**   7/4
**reasons [2]**   8/21 17/6
**reboot [1]**   11/11
**recall [1]**   8/19
**receive [1]**   8/5
**recognized [1]**   16/19
**recording [1]**   3/21
**refer [3]**   6/10 13/8 18/21
**reference [2]**   8/8 13/15
**referencing [2]**   9/6 15/4
**referring [2]**   6/11 13/7
**regard [3]**   8/7 20/5 24/23
**regarding [2]**   22/13 23/1
**regardless [1]**   15/19
**register [1]**   5/5
**registered [1]**   4/16
**regulation [1]**   15/25
**regulations [1]**   26/8
**reject [1]**   13/4
**rejected [2]**   16/4 22/3
**relate [1]**   19/17
**relatively [2]**   10/15 22/14
**release [1]**   11/11
**relevant [1]**   12/15
**relying [2]**   17/7 17/8
**remain [1]**   16/9
**reopen [1]**   16/25
**reopened [1]**   16/23
**repeat [1]**   7/18
**reply [1]**   20/10
**reported [1]**   26/6
**Reporter [1]**   1/19
**reporter's [2]**   1/13 9/7
**represent [1]**   15/11
**reputation [1]**   7/2
**resolution [1]**   19/7
**resolved [1]**   20/19
**resources [2]**   10/8 16/16
**respect [1]**   4/5
**response [2]**   24/11 24/19
**result [1]**   18/9
**reviewed [1]**   3/23
**revive [1]**   17/2
**right [8]**   5/20 6/6 12/2
12/16 20/2 22/5 22/21 23/9
**Righthaven [8]**   17/25 18/6
18/10 23/13 24/2 24/7 24/13
24/17
**rights [2]**   14/13 15/14
**rolling [1]**   12/9
**Rothschild [13]**   2/4 3/14 4/3
4/9 5/15 6/21 8/3 9/5 10/23
20/2 21/19 22/7 22/9
**royalties [1]**   12/10
**RPR [1]**   26/12
**rule [2]**   16/11 16/20
**rules [2]**   15/19 22/13
**run [2]**   10/24 11/24

**runs [1]**   12/4

**S**

**said [2]**   17/8 21/1
**same [5]**   10/12 15/19 16/6
17/24 23/12
**satisfaction [1]**   4/8
**saw [1]**   18/8
**say [8]**   5/5 11/17 17/20
19/14 21/3 21/6 21/8 21/15
**saying [2]**   6/25 17/9
**says [1]**   7/17
**SB [2]**   1/8 3/9
**schedule [13]**   3/25 4/16 4/20
5/3 5/8 5/9 5/12 5/13 6/2
6/3 7/9 8/8 10/1
**scheduled [3]**   4/13 4/21 5/17
**schedules [4]**   7/3 8/20 20/9
20/10
**Scott [18]**
**second [3]**   9/5 9/12 10/7
**secondly [2]**   13/3 19/12
**seconds [2]**   22/22 23/2
**Section [1]**   26/4
**see [1]**   5/1
**seeking [3]**   20/18 21/1 21/1
**seem [1]**   21/2
**seems [3]**   7/14 21/22 21/24
**seen [1]**   15/20
**sell [1]**   8/1
**sense [2]**   15/6 18/15
**separate [1]**   23/20
**series [2]**   6/4 7/21
**serve [1]**   16/6
**setting [1]**   18/16
**short [4]**   10/9 10/16 22/14
22/14
**should [8]**   4/5 6/9 11/12
15/12 18/14 22/22 23/16 24/9
**shouldn't [2]**   12/17 24/6
**show [7]**   4/25 5/1 7/25 10/4
11/6 12/11 12/20
**sic [1]**   9/11
**significance [1]**   6/8
**similar [4]**   10/5 14/14 15/5
17/21
**similarly [1]**   19/8
**Simmers [1]**   18/8
**simply [2]**   16/12 17/24
**since [1]**   8/13
**single [1]**   3/24
**situation [2]**   10/17 14/3
**six [4]**   20/20 20/21 21/4
21/9
**slash [1]**   11/2
**slippery [1]**   21/5
**slope [1]**   21/5
**Slow [1]**   14/23
**Snipes [1]**   13/16
**so [41]**
**some [3]**   11/7 15/20 18/2
**something [6]**   4/16 5/4 5/22
14/2 17/23 22/16
**Soriano [1]**   2/5
**sorry [1]**   7/10
**sort [1]**   23/3
**sounds [1]**   18/11
**South [1]**   2/14
**specific [4]**   8/19 12/8 21/13
22/17
**specifically [7]**   8/7 15/4
15/23 17/20 20/25 24/16
24/23
**speculation [1]**   20/16
**spelling [1]**   9/8
**spring [1]**   6/19
**stage [2]**   20/7 20/13
**stand [1]**   17/18
**standards [1]**   16/11

**standing [2]**   12/17
15/21
**Stars [1]**   2/6
**started [2]**   11/6 22/13
**starting [1]**   3/12
**state [7]**   3/11 10/10 10/11
11/17 12/5 19/24 20/1
**stated [2]**   8/21 16/12
**statement [1]**   12/15
**STATES [4]**   1/1 1/4 26/5 26/9
**statute [9]**   9/20 10/23 11/12
11/24 12/4 12/9 15/4 15/24
16/10
**statutory [6]**   13/9 15/20
16/13 17/13 23/6 23/10
**stay [29]**
**stenographically [1]**   26/6
**Stephen [1]**   2/4
**Steven [1]**   3/13
**still [1]**   17/10
**stop [1]**   21/16
**stopped [1]**   18/19
**story [1]**   6/3
**Street [1]**   1/20
**strictures [1]**   23/10
**strongest [1]**   17/8
**studied [1]**   20/11
**subject [1]**   19/18
**submission [1]**   24/23
**submitted [2]**   6/23 6/24
**such [2]**   13/9 18/3
**sue [3]**   15/3 15/13 15/24
**sufficient [1]**   7/20
**suggesting [5]**   5/22 5/23 6/9
17/16 24/5
**suggestion [1]**   6/15
**suit [12]**   13/21 13/23 14/12
14/19 14/25 15/23 16/3 16/7
16/9 18/16 19/16 23/11
**Suite [1]**   1/20
**support [1]**   18/6
**Supreme [5]**   15/16 15/22 16/4
17/22 23/22
**sure [2]**   3/20 14/2
**sympathy [1]**   16/14

**T**

**take [2]**   16/22 24/22
**talk [1]**   9/14
**talking [1]**   22/13
**tell [1]**   8/7
**tells [1]**   8/10
**tentative [7]**   3/24 4/2 4/4
5/9 5/24 6/10 6/14
**terms [1]**   13/12
**tested [1]**   9/22
**than [5]**   6/11 8/11 8/13 8/17
12/8
**Thank [4]**   4/11 24/25 25/1
25/2
**that [156]**
**their [3]**   14/13 16/9 19/7
**them [3]**   6/4 18/5 22/3
**then [10]**   9/4 11/7 16/25
18/25 19/5 19/6 19/7 19/14
20/22 21/25
**there [34]**
**therefore [1]**   5/1
**these [14]**
**they [16]**
**THIBODEAUX [2]**   1/19 26/12
**things [3]**   4/22 5/2 23/3
**think [20]**
**this [59]**
**thorough [3]**   7/2 8/11 8/11
**those [14]**
**though [2]**   16/20 20/14
**thought [1]**   7/22
**three [6]**   11/2 11/18 20/20

**T**

**three...** **[3]**   20/20  21/6  21/9
**through** **[2]**   23/3  23/22
**throughout** **[1]**   18/1
**tie** **[1]**   19/1
**Tillamook** **[1]**   15/16
**time** **[10]**   8/16  10/18  11/24
13/1  13/2  13/6  14/25  19/2
20/8  21/24
**Title** **[1]**   26/4
**today** **[1]**   10/13
**told** **[1]**   10/14
**Tolles** **[2]**   2/13  3/17
**tolling** **[6]**   11/7  11/22  11/25
12/13  21/22  21/23
**too** **[3]**   8/5  10/21  21/15
**total** **[1]**   4/10
**touch** **[2]**   4/7  17/19
**trademarks** **[1]**   5/10
**transcript** **[3]**   1/13  26/6
26/7
**transferred** **[1]**   23/8
**transpires** **[1]**   13/5
**tried** **[3]**   8/1  10/5  22/12
**trigger** **[1]**   11/3
**triggered** **[1]**   11/12
**true** **[2]**   15/21  26/5
**trustee** **[15]**
**trustees** **[2]**   19/4  20/6
**try** **[1]**   18/22
**trying** **[3]**   5/2  6/1  7/12
**tunc** **[1]**   14/21
**turn** **[2]**   7/8  12/17
**turns** **[1]**   20/21
**Twenty** **[1]**   2/7
**Twenty-Fifth** **[1]**   2/7
**two** **[10]**   5/2  8/23  9/1  11/3
11/18  12/11  12/23  19/16  20/4
21/7
**type** **[1]**   23/15

**U**

**U.S** **[1]**   1/19
**unambiguously** **[1]**   5/20
**unauthorized** **[1]**   24/12
**unaware** **[2]**   7/15  7/17
**under** **[3]**   23/10  24/10  24/23
**understand** **[3]**   6/7  7/13
24/21
**understanding** **[1]**   4/20
**undisclosed** **[1]**   19/15
**unfair** **[1]**   9/24
**unfairly** **[2]**   9/19  9/19
**UNITED** **[4]**   1/1  1/4  26/5  26/9
**unreasonable** **[1]**   19/2
**unsuccessfully** **[2]**   8/1  10/6
**until** **[2]**   10/4  11/5
**up** **[5]**   12/3  16/24  17/1  19/1
21/20
**upon** **[2]**   4/7  17/8
**us** **[4]**   4/15  15/16  15/18  19/1
**used** **[2]**   11/4  11/5

**V**

**valid** **[1]**   9/22
**Valley** **[1]**   14/8
**value** **[4]**   7/22  7/25  10/3
10/4
**various** **[1]**   15/5
**versus** **[7]**   3/9  5/25  9/10
9/12  13/16  14/8  15/16
**very** **[5]**   4/12  17/21  18/11
21/24  24/21
**via** **[1]**   3/6
**viable** **[2]**   11/14  11/21
**videoconference** **[1]**   3/7
**violater** **[1]**   16/2

**W**

**waiting** **[1]**   21/20
**walk** **[1]**   13/20
**Walt** **[2]**   1/9  3/9
**want** **[6]**   4/4  6/15  8/15  20/3
22/11  22/15
**wanted** **[3]**   4/12  7/21  8/21
**Warren** **[6]**   23/13  23/15  24/2
24/7  24/13  24/17
**was** **[50]**
**wasn't** **[1]**   20/1
**waste** **[1]**   16/16
**ways** **[1]**   15/5
**we** **[24]**
**well** **[13]**   4/19  6/13  6/17
7/16  9/7  11/1  12/14  12/25
18/9  19/13  19/16  19/21  24/21
**were** **[8]**   3/6  4/6  5/2  6/16
7/21  11/18  16/23  20/10
**West** **[1]**   1/20
**WESTERN** **[1]**   1/2
**what** **[18]**
**Whatever** **[1]**   5/18
**whatsoever** **[1]**   8/8
**when** **[13]**   5/8  7/14  8/5  9/15
10/23  11/4  12/4  12/5  14/19
18/19  22/12  22/18  23/25
**whenever** **[1]**   10/1
**where** **[4]**   10/17  13/18  13/19
13/25
**Whereas** **[2]**   23/12  23/13
**whether** **[13]**   4/5  4/15  5/13
5/18  5/19  5/25  8/18  9/15
15/20  17/13  22/20  22/25  23/9
**which** **[13]**   4/6  4/25  6/5  6/23
7/18  10/12  12/12  15/4  15/24
18/1  18/17  24/3  24/12
**while** **[1]**   18/2
**who** **[5]**   7/8  8/2  15/23  19/10
19/21
**why** **[3]**   4/13  12/17  21/21
**will** **[11]**   4/9  10/10  10/19
10/20  17/5  20/2  20/16  21/17
22/6  22/22  24/22
**wind** **[1]**   21/20
**wish** **[1]**   4/3
**within** **[2]**   8/11  12/7
**without** **[2]**   9/19  10/9
**WL** **[1]**   9/13
**won't** **[1]**   21/16
**Wongab** **[1]**   23/13
**word** **[2]**   16/15  20/3
**words** **[1]**   7/12
**work** **[3]**   11/5  21/25  24/13
**would** **[32]**
**wouldn't** **[1]**   7/7
**wrap** **[1]**   12/3

**Y**

**Y-A-M-A-D-A** **[1]**   13/17
**Yamada** **[3]**   13/16  17/17  17/19
**year** **[1]**   21/10
**years** **[7]**   8/18  10/4  11/2
11/3  11/18  12/11  16/18
**yes** **[7]**   8/25  17/12  17/19
22/8  22/10  22/24  24/15
**yet** **[1]**   21/18
**you** **[59]**
**your** **[37]**